Perry E. LARSON, et al., Appellants,

v.

ENSERCH EXPLORATION, INC., et al., Appellees.

No. 9363.

Court of Appeals of Texas, Amarillo.

Oct. 29, 1982.

Rehearing Denied Dec. 21, 1982.

John L. Roach, Inc., D. Stephen Fort, Dallas, for appellants.

Crenshaw, Dupree & Milam, Cecil Kuhne, Lubbock, Jim W. Sowell, Quanah, Gibson, Ochsner & Adkins, Sterling E. Kinney, Wayne P. Sturdivant, Amarillo, Donald J. Weber, Thomas M. Callan, Dallas, for appellees.

Before REYNOLDS, C.J., and DODSON and COUNTISS, JJ.

COUNTISS, Justice.

This dispute is between seven brothers and sisters, one sister-in-law and two competing holders of oil, gas and mineral leases on the same tracts of land in Hardeman County. The brothers and sisters are the beneficiaries of a testamentary trust established by Mrs. Stella Love Bryant, the common source of title of all parties. One of the executors of Mrs. Bryant's estate executed oil and gas leases to appellee Enserch Exploration, Inc. Later, two of the trustees of her testamentary trust executed an oil and gas lease on the same property to appellant Perry E. Larson's assignor. After the lease was assigned to Larson, he and the two trustees brought this suit to recover possession of, and remove a cloud on their title to, the property. Because we are satisfied the trustees did not have authority to execute the lease to Larson's assignor, we affirm.

Mrs. Bryant died testate on September 13, 1974. She appointed three of her brothers, appellees Glynn and Patrick Love and appellant Jack Love as independent executors and, as pertinent here, devised her property, and instructed her executors as follows:

### III.

After the payment of my just debts ... and after full tax clearances have been obtained from the State of Texas and the United States Treasury Department, it is my request that *the Executors of my estate shall file a final report with the County Probate Court of Wilbarger County, Texas, and that the balance of my estate shall automatically pass to the Stella Love Bryant Trust,* which is hereinafter set out, and which is attached hereto and made a part hereof.

### IV.

So that there may be ample time to pay my debts and obtain tax clearances from all taxing bodies, it is my desire that all of my real estate ... be operated by my Executors for a period of three (3) years before the same shall pass to my Trust. . . .

(Emphasis added.)

In the event one of her executors failed to qualify, Mrs. Bryant directed the two remaining executors to handle the affairs of her estate.

In the introductory paragraph of the trust to which her property was devised, Mrs. Bryant appointed Glynn, Jack and another brother, appellant Bobby Love, as trustees, empowered two of the three trustees to act for the trust, and bargained, sold and conveyed to the trust:

"all of my real and personal property *which is shown in the Final Report of the Executors of my estate,* such property being described therein for the uses and purposes and upon the terms and conditions hereinafter set forth."

(Emphasis added.)

She also provided for the term of the trust as follows:

*The trust shall continue for a period of ten (10) years after my executors have filed a final report with the Probate Court of Wilbarger County, Texas* showing that all taxes, federal and state, have been paid and clearances received from both bodies.

(Emphasis added.)

Upon termination of the trust, its assets were to be distributed to her brothers, appellants Jack and Bobby Love and appellees Glynn and Patrick Love and her sisters, appellees Grace Love Lewellan, Ruth Love Seamster and Sue Love Safford.

The "final report" called for in the quoted sections of the will and the trust has never been filed. Jack and Glynn qualified as independent executors, undertook administration of the estate and paid the debts and taxes. Patrick did not qualify as an executor. Neither of the executors took any other significant action on behalf of the estate until May 10, 1978, when Glynn, acting individually, as co-executor and as co-trustee of the estate leased the estate's minerals to appellee Enserch. Thereafter, on January 25, 1979, his sisters, Sue and Ruth, executed oil and gas leases to Enserch. Also, between May 15, 1978 and February 20, 1979, Glynn purchased the interests of Jack, Grace, Patrick, Sue and Ruth in the estate realty. The framework for the present controversy was completed on January 24, 1979, when appellants Bobby and Jack Love, in their capacity as trustees of Mrs. Bryant's testamentary trust, leased the estate minerals to Larson's assignor.

After the latter lease was assigned to Larson, he, Bobby and Jack brought this suit against Enserch, Grace, Patrick, Sue, Ruth, Glynn and Glynn's wife Mida. Alleging the need to remove a cloud from their title and recover possession of the mineral estate in question, Larson and the trustees attempted unsuccessfully to convince the trial court that only the trustees of the testamentary trust could execute a valid oil and gas lease of the minerals. In this court, they attack the adverse judgment by ten points of error. By the first three, they focus on the issue of control of the property, contending that estate administration had terminated and trust administration had commenced before the executor or the trustees leased the minerals. Larson's and the trustees' remaining points of error, by which they attack Enserch's lease and Jack's conveyance to Glynn of his interest

in the estate realty, are necessarily predicated on their successful demonstration that the estate property was under trust administration when the Enserch lease and Jack's deed were executed. The brothers and sisters who are appellees also bring forward two points of error by which they argue that a potentially adverse fact finding does not have proper evidentiary support or, alternatively, is immaterial.

In order to obtain relief in this court, Larson and the trustees must prevail on points one, two or three, by which they argue that the trustees controlled the estate realty when the leases were executed. Therefore, we will resolve those points first.

■ Within the context of the facts in this case, there are no statutes or cases that override the provisions of a will and fix precise times when estate property must come under control of testamentary trustees. Thus, initially we must examine the will to learn whether it gives instructions on the matter. In doing so, we apply familiar rules. Our duty is to determine the intention of the testator, as revealed by the words used in the will, and to enforce that intention as stated if it is legally permissible to do so. *Sellers v. Powers,* 426 S.W.2d 533, 536 (Tex.1968). If the words used by the testator are clear and unambiguous, the court simply enforces the instructions of the testator without further inquiry. *Sanderson v. First National Bank in Dallas,* 446 S.W.2d 720, 723 (Tex.Civ.App.—Dallas 1969, writ ref'd n.r.e.); *Henneke v. Andreas,* 473 S.W.2d 221, 223 (Tex.Civ.App.—Austin 1971, writ ref'd n.r.e.). If the words used by the testator are unclear, the will is ambiguous and the court must construe it by looking at the will as a whole and the circumstances surrounding its execution, *Pruett v. Berkeley,* 405 S.W.2d 433, 435 (Tex.Civ.App.—Waco 1966, no writ), and applying various rules of construction. *Silverthorn v. Jennings,* 620 S.W.2d 894, 896 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.).

■ In this case, the testatrix's intention is evident, the words are clear and construction is unnecessary. In paragraph III of the will, Mrs. Bryant told her executors to file a final report with the probate court of Wilbarger County and stated that the balance of her estate would automatically pass to the trust. In the introductory paragraph of the trust she conveyed to it all property shown in the final report of her executors. She then established a 10 year term for the trust "after my executors have filed a final report with the Probate Court of Wilbarger County, Texas. . . ." Thus, it is evident that the event that breathes life into the trust is the filing of the final report. Until that occurs, neither the property in the trust nor the term of the trust is known. Under those circumstances we can only conclude that Mrs. Bryant did not intend the trust to be activated, or her trustees to function, until the final report is filed. Because it has not been filed, the trust has not been activated and her trustees did not have the authority to execute an oil and gas lease on behalf of the trust.

Two contrary arguments are advanced by Larson and the trustees. First, they say the above quoted portion of paragraph IV of the will, where Mrs. Bryant directed her executors to operate her real estate "for a period of three years before the same shall pass to my Trust" means the realty automatically passed to the trust at the end of three years. However, we view the phrase as a statement of the minimum time, not the maximum time, during which the realty must be operated by the executors. The language does not forbid the executors from operating the realty longer and the suggested automatic transfer would ignore the other specific directions of the will, as discussed above.

Second, Larson and the trustees say that the administration of the estate was complete when the debts and taxes were paid, approximately a year and a half after Mrs. Bryant's death. At that time, they argue, the authority of the executors ended and the authority of the trustees began. In support of their argument, they cite various cases and Probate Code sections that say the reason for administration of an estate no longer exists when the debts and taxes have been paid.

We do not disagree with the authorities cited by Larson and the trustees. However, the cases and the Code sections do not prohibit Mrs. Bryant's requirement that specific steps be taken in order to close the estate and activate the trust. We are not holding, of course, that the proper parties could not force the executors to file the final report after debts and taxes were paid; however, no one has done so. If we are going to respect Mrs. Bryant's wishes we must follow her instructions. When we do so, Larson and the trustees cannot prevail. Points of error one, two and three are overruled.

Our disposition of the first three points renders the remaining points moot. Under their count seeking to recover possession, which was alleged as a trespass to try title action, Larson and the trustees were required to recover on the strength of their title, not the weakness of Enserch's title. *Mize v. Wood County,* 460 S.W.2d 152, 154 (Tex.Civ.App.—Tyler 1970, writ ref'd n.r. e.); *Rubiolo v. Lytle,* 370 S.W.2d 202, 205 (Tex.Civ.App.—San Antonio 1963, writ ref'd n.r.e.). The same reasoning applies to their count seeking removal of a cloud on their title. They had the affirmative burden of establishing their title as an element of their cause of action. See *James v. Eagle Rock Ranch,* 304 S.W.2d 471, 476 (Tex.Civ.App.—Austin 1957, no writ). Having concluded that they did not do so, we need not decide whether they established other elements of their action, such as the invalidity of the lease to Enserch or Jack's deed to Glynn. Because we are affirming the judgment of the trial court, the points advanced by several of the brothers and sisters as appellees are also moot and will not be resolved.

The judgment of the trial court is affirmed.