IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-096-CV





J. WILLIS JOHNSON III,



 APPELLANT


vs.





JOHN MARK MCLAUGHLIN, TEMPORARY ADMINISTRATOR, ET AL.,



 APPELLEES




 




FROM THE COUNTY COURT OF TOM GREEN COUNTY



NO. 14,506, HONORABLE ROBERT P. POST, JUDGE PRESIDING



 





 J. Willis Johnson appeals from an order of the probate court construing the will of
Mary B. Johnson Hall and authorizing her personal representative, John Mark McLaughlin, to
distribute her estate. We will affirm the order of the court below.



THE CONTROVERSY


 Hall died in June 1984 and her will was admitted to probate. The will (1) made
certain specific devises and bequests, (2) directed payment of her obligations "as soon . . . as shall
be practicable" from specified items of property, and (3) gave the residue of her personal property
to a Dallas bank and the residue of her real property to a San Angelo bank, in trust in each instance for her niece Ruth G. McGill and her nephew J. Willis Johnson. The terms of the
two testamentary trusts were identical. They directed as follows:

 1.  that the trustees pay the net income from the trusts periodically to McGill and
Johnson, in equal shares, during life.

 2.  that the corpus of the trusts be divided into equal shares at the death of either
McGill or Johnson, the share of the survivor to be retained in the trust until death and the share
of the decedent being delivered to his or her surviving children, if any. (1)

 The independent executor appointed by Hall declined to serve. The probate court
appointed McLaughlin temporary administrator, granting him certain powers and no others except
as allowed by further order of the court. As a result, the period of administration consumed
almost six years.

 During the course of administration, it became apparent that the assets expressly
set aside in the will for the payment of taxes, debts, and expenses would be insufficient for the
purpose. Consequently, McLaughlin paid a part of these obligations with sums derived from
income-producing assets of the estate without determining whether the receipts were allocable to
principal or income.

 After a hearing, the probate court approved McLaughlin's final accounting,
including his application of estate income to pay estate obligations for taxes, debts, and
administration expenses. The order also authorized him to distribute the estate as directed in
Hall's will. Johnson appeals from the order.



DISCUSSION


 In three points of error, Johnson complains the probate-court order was erroneous
in its construction of the will and in its application of the law. He contends that under a proper
construction of the will and the applicable rules of law, McLaughlin was not authorized to spend
estate income in satisfaction of estate debts, taxes, and administration expenses; rather, he was
obliged to obtain the necessary sums from selling or mortgaging property in the corpus of the
residuary estate, preserving intact for the residuary legatees and devisees, proportionately, any
income derived from estate properties during the period of administration. (2) 

 In support of his contention, Johnson cites Stiff v. Fort Worth Nat'l Bank, 486
S.W.2d 859, 862 (Tex. Civ. App.--Eastland 1972, writ ref'd n.r.e.). Stiff declares that unless the
will directs otherwise, (1) the personal representative must pay debts, taxes and expenses of
administration from the corpus of the residue, with all residuary devises and bequests bearing their
proportionate part, and (2) income received from the residuary estate during administration
belongs to the residuary devisees and legatees proportionately, and debts, taxes and expenses of
administration may not be charged against such income. Id.; see also Hurt v. Smith, 744 S.W.2d
1, 6 (Tex. 1987) (citing Stiff for the proposition that income earned by estate assets during the
period of administration belongs to the beneficiaries of those assets, absent a contrary direction
in the will); 96 C.J.S. Wills § 799 (1957) (stating that unless an intention to make some other
disposition clearly appears in the will, income earned by residuary assets during the administration
period becomes part of the residue itself). 

 The rules stated in Stiff would impute to Hall an intention (1) to bequeath to the
residuary legatees all income derived from estate properties during administration, and (2) to
reduce the corpus of the residuary estate, if necessary, to satisfy estate obligations. But these
rules do not apply if Hall's will provides to the contrary. The ultimate issue on appeal is,
therefore, whether Hall's will reflects a contrary intention. See Kelley v. Marlin, 714 S.W.2d
303, 305 (Tex. 1986) (the testator's intent is the single most important factor in construing a will).



Language of the Will


 In her will, executed in 1977 and admitted to probate in 1984, Hall directed
payment "as soon . . . as shall be practicable" with regard to her debts, the expenses of
administration, and estate and inheritance taxes. She then declared in the will:



At the time of my publishing this will I have set aside substantial liquid assets
available for the satisfaction of such obligations, and I direct that such liquid assets
. . . shall be committed to and used by the Executor . . . in satisfaction of such
obligations, to the full extent, if such be required. Then, should the liquid assets
of my estate be insufficient to pay and satisfy the debts, expenses and taxes then
remaining, I authorize my Executor to sell, deed and convey certain real properties
of my estate for such purposes . . . .



It is undisputed that these "certain real properties" included properties within the corpus of the
residuary estate. The will also authorized the executor to borrow money and mortgage other
properties if the sale of Hall's real property did not supply sufficient money to pay her
obligations.

 After making the foregoing provision for payment of debts, taxes, and
administration expenses, Hall declared in her will as follows:



 At the conclusion of the administration of my estate, the payment of debts,
expenses and taxes, but expressly excluding the payment of those mortgage debts
which may have been incurred by the Executor of my estate to secure funds for the
purposes stated above, . . . I create two trust estates of the rest, residue and
remainder of my property and estate . . . . (3)



 The McGills argue that the foregoing passages reflect Hall's intent that (1) the
trusts were to come into existence only after the administration period ended, thereby denying
Johnson, the trust beneficiary, of any right to income before that time and (2) the "liquid assets"
of the estate, which the personal admininstrator was to exhaust first in discharging estate
obligations, included income from the residuary assets. We will examine each of these
contentions.


Time of Vesting


 In his first point of error, Johnson contends his interest under the will vested at the
moment of Hall's death. Thus, he anticipates the McGills' three contentions: (1) Hall intended
to create the trust, or to bring it into existence, only "[a]t the conclusion of the administration of
[Hall's] estate, the payment of debts, expenses, and taxes," and not before; (2) she intended
further that the trust receive only such property as remained at that time; and (3) the trust could
not have acquired any title or right to income during the period of administration because it did
not exist as a legal entity during that period. The McGills contend, in effect, that the Stiff rule
is inapplicable in this case because under the language of the will there could be no residuary
beneficiaries other than the administrator, McLaughlin, during the administration period. We
disagree. Our examination of the language of the will and the purposes underlying Hall's
disposition compels a conclusion that title to the residuary assets vested in the residuary
beneficiaries at the moment of Hall's death.



Intent as Reflected by Will Language


 Under the Probate Code, title to property devised and bequeathed in the will vests
in the beneficiaries immediately upon the testator's death. Tex. Prob. Code Ann. § 37 (Supp.
1992); see Marlin v. Kelly, 678 S.W.2d 582, 588 (Tex. App.--Houston [14th Dist.] 1984), aff'd,
714 S.W.2d 303, 306 (Tex. 1986). The McGills argue section 37 is nevertheless inapplicable in
this case because Hall provided for a different disposition by stating, "At the conclusion of the
administration of my estate, . . . I create two trust estates of the rest, residue and remainder of
my property and estate . . . ." This is not, however, the sole indication of Hall's intent. Hall also
provided subsequently in her will that "I have created two trust estates of personalty and realty"
and she followed this by instructions governing the operation of the two trusts. A will speaks at
the time of death. See Shriner's Hosp. for Crippled Children v. Stahl, 610 S.W.2d 147, 151
(Tex. 1980). The words "have created" mean that the speaker considers the act of creating
complete at the time of speaking. See Theodore M. Bernstein, The Careful Writer 413 (1965)
(stating that a "perfect infinitive," which contains the word "have," is used to denote action
occurring before something else). Therefore, the phrase "have created" indicates that Hall
considered the act of creating the trusts complete at her death. Such a construction necessarily
denies the futurity aspect upon which the McGills' theory depends. See Perfect Union Lodge No.
10, A.F. & A.M. v. First Interfirst Bank, 748 S.W.2d 218, 220 (Tex. 1988) (a will should be
construed to give effect to every part of it). We must presume Hall placed nothing superfluous
or meaningless in her will and intended every word to have a meaning and to play a part in the
disposition of the property. Marlin, 678 S.W.2d at 587.

 To avoid application of Probate Code section 37, Hall's will had to indicate an
unambiguous intent to override the general rule that assets vest in the will devisees at the moment
of death. (4)
 See Tex. Prob. Code Ann. § 37 (West Supp. 1992); see also Tex. Prop. Code Ann.
§ 113.103(a) (West 1984). The language of Hall's will does not reflect an unambiguous intent
to delay vesting of title to the residuary assets. See Marlin, 678 S.W.2d at 578 (a court should
ignore a word or clause in a will only when it is clearly contrary to the general intention of the
testator).



Intent as Reflected by Testator's Purposes


 A court must examine a will in its entirety to ascertain the testator's intent. Bergin
v. Bergin, 315 S.W.2d 943, 946 (Tex. 1958). If any particular clause or paragraph, considered
alone, indicates an intent contrary to the intent manifested by the whole instrument, the court
should disregard that inconsistent clause or paragraph. Id. at 947; Disabled Am. Veterans v.
Mullin, 773 S.W.2d 408, 410 (Tex. App.--San Antonio 1989, no writ). We believe Hall's will, viewed in its entirety, manifests an intent that title to the residuary assets vest at death
in the two banks as trustees.

 First, the McGills' interpretation of the will would place it in violation of the rule
against perpetuities because the administration of the estate might have lasted more than twenty-one years after Hall's death. (5) See 61 Am. Jur. 2d Perpetuities § 42 (1981) (stating that a future
interest which will not vest until after the completion of the administration of the testator's estate
is invalid because of the possibility that probate proceedings might not be completed within
twenty-one years of the testator's death); see also Foshee v. Republic Nat'l Bank, 617 S.W.2d
675, 677 (Tex. 1981) (applying the rule against perpetuities to invalidate a trust of indefinite
duration); Henderson v. Moore, 190 S.W.2d 800, 801 (Tex. 1945) (stating that if the will vests
title in the devisee immediately upon the testator's death, the gift is valid, but if the will postpones
the vesting until after the perpetuities period, the gift fails and the residuary assets pass by
intestacy).

 If the rule against perpetuities were to apply, the gifts to the trusts would lapse and
the residuary assets of Hall's estate would pass by intestacy. Texas courts do not favor a
construction that will render a decedent intestate as to any part of his or her estate. McGill v.
Johnson, 799 S.W.2d 673, 676 (Tex. 1990). To avoid that result, we interpret the will to reflect
an intent that title to the residuary assets vest at Hall's death. See Anderson v. Menefee, 174 S.W.
904, 908 (Tex. Civ. App.--Fort Worth 1915, writ ref'd) ("If the will when fairly construed leaves
the question [of time of vesting] in doubt, the doubt will be solved in favor of vesting of the title
at the earliest possible moment, so as to avoid a conflict with the rule against perpetuities and to
uphold the will."); see also Trautz v. Lemp, 46 S.W.2d 135, 139 (Mo. 1932) (to avoid the effect
of the rule against perpetuities, the court held that legal title passed to the testamentary trustees
on the date the will became effective, even though the will said the trust was "to commence
immediately upon the termination of the administration" of the estate). A contrary construction
would defeat Hall's express purpose to give her assets in trust to her nephew and niece. We
therefore conclude Hall intended title to the residuary assets to vest in the residuary beneficiaries
at the time of her death. See Tex. Prop. Code Ann. § 5.043(a) (West 1984) (allowing a court to
construe an instrument in such a way that it does not violate the rule against perpetuities).

 Moreover, we do not believe the language cited by the McGills ("At the conclusion
of the admininstration of my estate . . . I create two trust estates . . . .") is necessarily inconsistent
with the overriding intent expressed by the will if one imputes to the language a meaning that
permits the carrying out of Hall's purpose: it refers to the time enjoyment or use of the residuary
estate begins, not to the time title is vested. The will vests title in the trustees at the time of death,
but postpones use or enjoyment of the assets until after the conclusion of the administration of the
estate. Thus, title to the residuary estate does not depend on a contingency; only the time of
enjoyment depends on a contingency.

 Even if title vested in the trusts at the conclusion of the administration of the estate,
however, we do not agree McLaughlin was free to expend estate income in whatever manner he
thought desirable. According to the McGills' theory, legal title vested in McLaughlin during the
period of administration. Under that theory, McLaughlin held legal title as trustee for the
residuary beneficiaries, the banks named in the will, who were themselves trustees for Johnson
and the McGills. See Zahn v. Nat'l Bank of Commerce, 328 S.W.2d 783, 788 (Tex. Civ.
App.--Dallas 1959, writ ref'd n.r.e.). As trustee for the two banks, McLaughlin remained under
a duty to carry out the instructions in Hall's will. Id. If the will contained no indications that
Hall intended for the personal representative to expend estate income to satisfy estate obligations,
McLaughlin was obliged to preserve estate income regardless of when title vested in the trusts. 
See Stiff, 486 S.W.2d at 862. The dispositive issue, then, is whether Hall intended McLaughlin
to have authority to spend estate income contrary to the rule of Stiff. If Hall intended the words
"liquid assets" to include income from the estate assets, McLaughlin complied with her directions
by expending that income, and the McGills must prevail; if not, we must remand to the trial court
to determine the proper allocation of the receipts during administration.



Meaning of "Liquid Assets"


 The central idea expressed in the passages quoted from the will is that Hall intended
the exhaustion of certain properties in a specified order to pay the sums required for her debts,
taxes, and the expenses of administration: (1) the liquid assets of the estate; (2) any amounts
derived by the executor from the sale of "certain real properties of my estate"; and (3) any
amounts derived by the executor from mortgaging certain other properties. The McGills argue
that the words "liquid assets" in Hall's will include income received during the period of
administration. Therefore, they contend, whether title to the residuary assets vested in the trustees
at Hall's death or at the conclusion of the administration period, the will directs the personal
representative to use the income to pay estate obligations as necessary. We agree.

 We find no explicit language in the will bearing on Hall's intent as to the use of
income to pay estate obligations. Thus, we must infer her probable intent from the language of
the will. Although we draw contrary inferences from the language of the will concerning Hall's
intent regarding the use of estate income, we believe the will, read in its entirety, demonstrates
that Hall intended for her personal representative to use estate income to pay estate obligations.



Indications That Income Should Be Expended


 First, Hall created the personal-property trust from "such remaining moneys,
savings, certificates of deposit, stocks, bonds and personal properties, if any remain." Under
Johnson's theory, the personal property vested in the trustee at the moment of Hall's death. 
Because the estate contained a substantial amount of personal property in the form of stocks, bank
accounts and other assets, income from that property would have begun accruing at that time. If
Hall intended that McLaughlin not use any of the income to pay estate obligations, personal
property would undoubtedly be available to fund the personal-property trust at the conclusion of
the administration of the estate. Yet, Hall apparently considered the possibility that no property
would remain to fund the personal-property trust at the end of the administration period. We infer
from this that she intended for her personal representative to have authority to use estate income
to pay the debts, taxes and administration expenses.

 Second, Hall indicated in her will a desire to have her estate administered quickly
and efficiently. She directed her personal representative to pay her estate obligations "as soon .
. . as shall be practicable." Although this is a common will provision, Hall also demonstrated her
desire for the personal representative to conclude the estate administration quickly by stating that
she had "set aside substantial liquid assets available for the satisfaction of such obligations." Even
an independent executor would likely be able to administer the estate more quickly and efficiently
by expending estate income instead of selling or mortgaging real property. This suggests an intent
to use estate income for satisfying estate obligations.

 Third, Hall expressly stated that she believed her will provided for a disposition
of her property that would "be fair to my relatives, including the children of [Johnson], if he shall
have such a child and be survived by the same." This statement suggests Hall did not intend for
Johnson to receive the income accrued during the period of administration at the expense of
leaving heavily mortgaged property to the McGills or to any child Johnson might have.



Indications That Income Should Not Be Expended


 We recognize that Hall's will contains language from which one could infer that
the income should be preserved for the residuary beneficiaries. First, Hall did not give her
personal representative express authority to expend the income to satisfy estate obligations. By
way of contrast, the testator in Stiff declared, "I authorize my executors to use income from my
estate during the period of administration to pay debts, taxes and administration costs . . . ." Stiff,
486 S.W.2d at 863.

 Second, in at least some of her references to "liquid assets," Hall meant those assets
she had set aside before her death to satisfy estate obligations. (6) Those assets, of course, would
not include income received after Hall's death.

 Third, Hall provided a detailed scheme for payment of her estate obligations: The
personal representative must exhaust liquid assets first, then sell certain real property, and finally
mortgage other real property. Hall even gave her personal representative instructions on which
properties to sell and which ones to retain. This heirarchy reflects a carefully considered plan for
payment of the debts, taxes and administration expenses. (7) Had Hall intended for her personal
representative to administer the estate contrary to the general rule of Stiff, she arguably would
have done so explicitly in a will as detailed as hers.

 We do not disregard these inferences. We merely find them less convincing than
the contrary inferences, which indicate an intent that the personal representative should have
authority to expend estate income to satisfy estate obligations. 



CONCLUSION


 We acknowledge that the prolonged administration period deprived the residuary
legatees of income they otherwise would have received during that time. The length of
administration, however, has no bearing on the testator's intent. See Tabassi v. NBC Bank--San
Antonio, 737 S.W.2d 612, 616 (Tex. App.--Austin 1987, writ ref'd n.r.e.) (stating that
circumstances arising after the testator's death and of which she was necessarily ignorant during
her lifetime do not alter the meaning of the will).

 In construing an ambiguous will, we place ourselves in the testator's position at the
time he or she executed the will. Stewart v. Selder, 473 S.W.2d 3, 7 (Tex. 1971). We are
instructed to look for guidance in the provisions of the will as a whole and the circumstances
surrounding its execution. See Guilliams v. Koonsman, 279 S.W.2d 579, 581 (Tex. 1955). From
the provisions of the will as a whole and the position of the testator at the time she executed the
will, we conclude Hall intended for her personal representative to use estate income to satisfy
estate obligations. We therefore overrule Johnson's three points of error.

 Finding no reversible error, we affirm the trial-court judgment.



 

 John Powers, Justice

[Before Justices Powers, Jones and B. A. Smith]

Affirmed

Filed: September 23, 1992

[Publish]

1. After Hall's death, McGill filed a disclaimer of her interest in the trusts in accordance
with the requirements of the Probate Code. See Tex. Prob. Code Ann. § 37A (West Supp.
1992). Her interest passed in fee simple to her children, Ruth McGill and J. Gordon McGill. 
See id. § 38(a) (West 1980). Because Ruth McGill and J. Gordon McGill have identical
interests, we will refer to them collectively as "the McGills."
2. Under Hall's will, Johnson's and the McGills' interests diverge sharply with respect to
the disposition of estate income. If Johnson is entitled to receive immediately half the income
received during the period of administration, the McGills are entitled to receive the other half
immediately as well. Johnson would benefit more than the McGills would, however, because
his half of the principal passes to the McGills if Johnson dies childless. If Johnson receives a
large lump-sum payment now, less principal remains for the McGills to take upon Johnson's
death because McLaughlin will have to sell or mortgage estate assets to pay Johnson and the
McGills. If Johnson is entitled to receive only future payments, those payments will be larger
than if he received a lump-sum payment, but he is unlikely to realize as much advantage from
the future payments as he would from an immediate lump-sum payment of accrued income. 
The McGills, on the other hand, enjoy a greater benefit if estate income can be used to pay
estate debts, taxes and expenses. This interpretation preserves more of the principal for them
in the event Johnson dies childless.
3. We have throughout our opinion supplied the emphasis in the quoted portions of the
will.
4. In a similar case, one Texas court apparently assumed the testamentary trust arose on the
effective date of the will. See Larson v. Enserch Exploration, Inc., 644 S.W.2d 61 (Tex.
App.--Amarillo 1982, writ ref'd n.r.e.). In Larson, the testator directed that after her
executors filed a final report with the local probate court, "the balance of my estate shall pass
automatically to the Stella Love Bryant Trust." She also instructed the executors to administer
the estate for three years to be certain all debts and taxes were paid. After three years had
passed, one of the trustees leased the estate's minerals, although the final report had never
been filed in the probate court. The court held that because there was no filing, the trustee
had no authority to lease the minerals. Id. at 63. The court spoke of the time the trust was
"activated," however, rather than when title to the assets vested or when the trust came into
being. Although the question of when the trust gained title to the assets did not explicitly
arise, the court apparently believed that the filing of the report served only to effect a transfer
of assets to the trust, not to create the trust. Id.

5. "When lives in being form no part of the period of suspension or postponement of the
vesting of title, the limit of time against perpetuities is twenty-one years from the death of the
testator." Henderson v. Moore, 190 S.W.2d 800, 801 (Tex. 1945).
6.   In her will, Hall used the phrase "liquid assets" five times: (1) "At the time of my
publishing of this will I have set aside substantial liquid assets available for the satisfaction of
[my estate] obligations"; (2) "I direct that such liquid assets, in the form of moneys, savings,
certificates of deposit, agency accounts, stocks and bonds, shall be committed to and used by
the Executor of my estate in satisfaction of such obligations, to the full extent, if such be
required"; (3) "Then, should the liquid assets of my estate be insufficient to pay the debts,
expenses and taxes then remaining, I authorize my Executor fully to sell, deed and convey
certain real properties of my estate . . . ."; (4) "[S]hould both the application of liquid assets,
as aforesaid, and the sums received from the sale of such real property still be insufficient
. . . , the Executor shall be authorized to borrow moneys . . . ."; and (5) in a 1981 codicil to
the will, Hall again authorized the Executor to sell real property "should the liquid assets of
my estate be insufficient" to pay estate obligations.
7.   In her will, Hall stated, "I have given great consideration and study to the provisions of
this will which I believe strongly to represent a basis of disposition of the property which will
be fair to my relatives . . . ."