NUMBER 13-06-551-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


ELAINE CASTLEBERRY BIGBEE, INDIVIDUALLY, 

AND AS INDEPENDENT EXECUTRIX OF MAY GLEN 

CASTLEBERRY, DECEASED, AND TRUSTEE OF 

THE CASTLEBERRY FAMILY IRREVOCABLE LIFE 

INSURANCE TRUST, THE CASTLEBERRY MARITAL

TRUSTS, AND THE CASTLEBERRY BY-PASS TRUST, Appellants,


v.
 


ROGER DALE CASTLEBERRY, Appellee.

 




On appeal from the 274th District Court of Comal County, Texas.


 




MEMORANDUM OPINION



Before Justices Garza, Benavides, and Vela


Memorandum Opinion by Justice Garza



 This is a probate matter concerning the compensation of an executrix of the estate
of Don and May Glen Castleberry (the "Estate") and a trustee of the Castleberry trusts. By
three issues, appellant, Elaine Castleberry Bigbee, asserts that the trial court's judgment
should be reversed because: (1) the district court erred in construing the intent of May
Glen's will, and Bigbee is entitled to statutory compensation as a matter of law; (2) May
Glen's will is ambiguous if the district court's interpretation of the will is adopted; and (3)
the parties' Rule 11 Agreement and the district court's September 28, 2005 order do not
preclude Bigbee's right to compensation. We reverse and remand for proceedings
consistent with this opinion.I. Factual and Procedural Background

 This dispute arises out of a family estate that exceeds $10 million. Don and May
Glen Castleberry ran a successful business involving aircrafts and aeronautics. The
couple had three children: the oldest son David, the middle son Roger Dale ("Dale"), and
the youngest daughter Bigbee. On August 29 ,1990, Don and May Glen each executed
virtually identical wills. Each made the other spouse the executor of their will and named
Bigbee as an alternative executrix, followed by Bank One. Specifically, May Glen's will
provided:

 A. Appointment of Independent Executor.


 I hereby appoint my husband, DONALD RAY CASTLEBERRY, as
Independent Executor, without bond. If he does not survive me, or shall fail,
refuse, or be unable to act as such, and in any event upon his death, I
appoint my daughter, ELAINE CASTLEBERRY BIGBEE, as Independent
Executrix of My Will and Estate, without bond. If she does not survive me or
is unable to serve, I appoint BANK ONE, TEXAS, N.A. in Austin, Texas, or
its successor in interest, to serve as Independent Executor, without bond.


(Emphasis in original). In addition to the wills, the Castleberrys established twelve trusts. 
With regard to the trusts, May Glen's will provided:


 B. Appointment of Trustees.

 

 1. Castleberry Marital Trust and Castleberry By-Pass Trust.

 

 I further direct that my husband, DONALD RAY CASTLEBERRY, and
ELAINE CASTLEBERRY BIGBEE serve as Co-Trustees of the Castleberry
Marital Trust and the Castleberry By-Pass Trust, without bond. So long
as my husband shall continue to serve as Co-Trustee, there shall be two
trustees. In the event that ELAINE CASTLEBERRY BIGBEE is unable to
serve as Co-Trustee, I direct that BANK ONE, TEXAS, N.A. serve as Co-Trustee, and should both my husband and daughter fail to survive me, expire
during the life of the trust or elect not to serve, BANK ONE, TEXAS, N.A.,
shall serve as sole Trustee.


 . . . .


 2. Residuary Trust(s).

 

 I direct BANK ONE, TEXAS, N.A. serve without bond as sole Trustee
of the residuary trusts created for the benefit of DAVID LYNN
CASTLEBERRY, ROGER DALE CASTLEBERRY, ELAINE
CASTLEBERRY BIGBEE, and/or my grandchildren.


(Emphasis in original).


 The wills did not provide for compensation to the surviving spouse for acting as
executor. Furthermore, Don and May Glen did not provide for compensation to be paid to
co-trustees. However, May Glen's will allowed for reasonable compensation to be paid to
any corporate executor or trustee as follows:

 My husband as Executor and Co-Trustee and my individual Co-Trustees
shall receive no compensation. Any corporate Executor or Trustee shall
receive reasonable compensation, taking into account the nature and extent
of the services rendered.

 

 On December 7, 1996, Don Castleberry died. His will was probated in January
1997, and May Glen served as the independent executrix of Don's will. Subsequently, in
November 1999, May Glen executed the first and only codicil to her will. The purpose of
the codicil was to name Bigbee as the sole executrix of the estate and the sole trustee of
all of the family trusts, including the residuary trusts in which the Castleberry children and
grandchildren were designated as beneficiaries. In all, Bigbee was appointed by May Glen
to serve as the sole trustee of the twelve different trusts. In an effort to maintain uniformity,
May Glen also exercised her powers of appointment under Don's will and appointed
Bigbee as the sole trustee for each of the trusts under his will.

 As was the case with the wills, May Glen's codicil is silent as to any compensation
that should be paid to Bigbee for serving as the executrix and sole trustee. May Glen died
on January 14, 2000, without making any further changes to her will. As such, Bigbee was
qualified to begin service as the sole executrix of the estate on February 2, 2000. 

 On July 23, 2002, Dale filed a lawsuit against Bigbee, in her individual and official
capacities as executor and sole trustee, alleging (1) breach of trust and duty of loyalty, (2)
breach of the duty of full disclosure, and (3) Kinzbach liability. (1) Dale sought a temporary
restraining order, temporary injunction, and a permanent injunction to prevent Bigbee from
liquidating investments, transferring any assets of the estate or trusts, or distributing any
assets of the estate or trusts until a full accounting was rendered. Furthermore, Dale
requested that Bigbee be removed as executor of the estate and sole trustee of the
Castleberry trusts. On August 19, 2002, Bigbee filed an answer accompanied by a
counterclaim against Dale asserting that Dale's lawsuit was brought in bad faith for the sole
purpose of harassing Bigbee. In addition, Bigbee sought a declaratory judgment on her
bad faith claim against Dale and attorney's fees. The trial court consolidated the probate
proceedings, Dale's lawsuit, and Bigbee's counterclaim into one cause number on
February 26, 2003.

 After a full day of mediation on September 15, 2004, the parties signed a Rule 11
Agreement, which was filed with the trial court on September 16, 2004. The Rule 11
Agreement provides, in relevant part:

 1. All claims dismissed with prejudice against the other party.

 

 2. Past distributions and/or expense paid are approved.

 

 . . . .

 

 11. Remaining cash--approximately $1,393,000 to be distributed to the 3
trusts (David, Roger, and Elaine) in equal 1/3 shares, of approximately
$464,456.65.


Bigbee signed the Rule 11 Agreement in all of her capacities. In addition, her husband,
Ron Bigbee, acting individually and as attorney-in-fact for David Castleberry, signed the
Rule 11 Agreement. (2)

 On February 23, 2005, Dale filed a motion to enter judgment and asserted two
additional causes of action with the trial court. (3) Bigbee filed her response on May 31,
2005, and the trial court held a hearing on the enforcement of the Rule 11 Agreement on
August 17, 2005. At the hearing, the parties discussed at length the division of all
remaining cash, and Bigbee's counsel argued that Bigbee should be able to hold some
cash back to cover the estate's expenses in the following year because the estate was not
wound up before the end of the year. The trial court enforced the Rule 11 Agreement and
entered an "ORDER CLARIFYING RULE 11 AGREEMENT AND REMAINING CLAIMS"
on September 28, 2005. (4) 

 Subsequently, on October 6, 2005, Bigbee filed a "MOTION TO DETERMINE
EXPENSE WITHHOLDING AND APPLICATION FOR PAYMENT OF EXECUTOR'S
COMMISSION." Bigbee sought to withhold $804,041.00 from the remaining assets as
commission for serving as the executrix of the estate and as trustee of the Castleberry
trusts. (5) Dale objected to Bigbee's attempt to seek compensation. (6) 

 On February 15, 2006, the trial court held a hearing on Bigbee's motion. The trial
court issued a letter ruling denying Bigbee's request for statutory compensation on March
9, 2006. (7)

 After the district court's letter ruling, Bigbee asked the court to reconsider its
decision and filed a brief in support of reconsideration. The trial court denied Bigbee's
request for reconsideration. Bigbee did not request findings of fact or conclusions of law
from the trial court. On August 16, 2006, the trial court signed an order severing Bigbee's
compensation claims in order to establish a final appealable order. (8) This appeal ensued. 

II. Analysis

 By her first issue, Bigbee contends that Don and May Glen's wills are silent with 

respect to executor and sole trustee compensation. Bigbee further contends that section
241 of the Texas Probate Code and section 114.061 of the Texas Property Code provide
for compensation of executors of estates and trustees, respectively. In addition, Bigbee
argues that the trial court misconstrued May Glen's intent by misapplying boilerplate
language meant to prevent ambiguities contained in the will. Conversely, Dale asserts that
May Glen's will and subsequent codicil clearly provide that May Glen did not intend for
Bigbee to receive compensation for assuming responsibilities as executrix or trustee. Dale
further asserts that Bigbee is not entitled to compensation because the issue has been
settled in the Rule 11 Agreement. In signing the Rule 11 Agreement, Dale argues that
Bigbee waived her claim for compensation.

A. Will construction principles

 In construing a will, the court's focus is on the testator's intent. San Antonio Area
Found. v. Lang, 35 S.W.3d 636, 639 (Tex. 2000). Determining a testator's intent from the
four corners of a will requires a careful examination of the words used. Id. If the will is
unambiguous, a court should not go beyond specific terms in search of the testator's intent.
Id. The testator's intention must be ascertained by viewing the will in its entirety. Johnson
v. McLaughlin, 840 S.W.2d 668, 672 (Tex. App.-Austin 1992, no pet.); Disabled Am.
Veterans v. Mullin, 773 S.W.2d 408, 410 (Tex. App.-San Antonio 1989, no pet.). "If this
[intent] can be ascertained from the language of the instrument [will], then any particular
paragraph of the will which, considered alone, would indicate a contrary intent, must yield
to the intention manifested by the whole instrument." Welch v. Straach, 531 S.W.2d 319,
321 (Tex. 1975) (quoting McMurray v. Stanley, 6 S.W. 412, 413 (Tex. 1887)); Johnson,
840 S.W.2d at 672; Mullin, 773 S.W.2d at 410. Absent ambiguity, the construction of a will
is a matter of law. Armstrong v. Hixon, 206 S.W.3d 175, 180 (Tex. App.-Corpus Christi
2006, pet. denied); Penland v. Agnich, 940 S.W.2d 324, 326 (Tex. App.-Dallas 1997, writ
denied). An ambiguity exists only when the will uses a word that is open to more than one
meaning. Lang, 35 S.W.3d at 639, 641; In re Estate of Hunt, 908 S.W.2d 483, 484-85
(Tex. App.-San Antonio 1995, writ denied).

B. May Glen Castleberry's Will (9)

 In reviewing May Glen's will, we find only one provision pertaining to compensation
for serving as the executor or executrix of the estate and trustee of the Castleberry trusts. 
It is the following provision in May Glen's will that is the basis for this dispute:

 D. Protection of Executor.

 . . . .

 My husband as Executor and Co-Trustee and my individual Co-Trustees shall receive no compensation. Any corporate Executor or
Trustee shall receive reasonable compensation, taking into account the
nature and extent of the services rendered.

 In reviewing the preceding provision, we must consider the context of the entire will
while carefully examining the words specifically chosen by the testator. See Lang, 35
S.W.3d at 639; see also Welch, 531 S.W.2d at 321; Johnson, 840 S.W.2d at 672; Mullin,
773 S.W.2d at 410. May Glen's will clearly provides that her husband, while serving as
executor and co-trustee, "shall receive no compensation." It also provides that "my
individual Co-Trustees shall receive no compensation." It is clear that, in using the term
"[c]o-trustees," May Glen intended for those individuals serving as co-trustees with her
husband to "receive no compensation." (10)
 That is not the case in this dispute. Had May
Glen intended to preclude Bigbee from receiving compensation as the sole executor and
sole trustee, she would have included language in the will stipulating that both a "trustee"
and/or "co-trustees" shall not receive compensation. However, May Glen did not include
such language in her will. "[C]ourts must not redraft wills to vary or add provisions 'under
the guise of construction of the language of the will' to reach a presumed intent." Lang, 35
S.W.3d at 639 (quoting Shriner's Hosp. for Crippled Children of Tex. v. Stahl, 610 S.W.2d
147, 151 (Tex. 1980)); see Welch, 531 S.W.2d at 322; Huffman v. Huffman, 339 S.W.2d
885, 888 (Tex. 1960). Furthermore, we should only focus on the "meaning of the words
she actually used." Lang, 35 S.W.3d at 639 (quoting Stahl, 610 S.W.2d at 151). Neither
May Glen's will nor her subsequent codicil address the potential situation of having a sole
executor or sole trustee and their entitlement to compensation.

 The trial court, in its letter ruling, relied heavily on the following provision of May
Glen's will: "For all intents and purposes in this Will all references to Trustee and Executor
in the singular number shall include the plural number." In essence, the trial court
construed this clause to preclude compensation to any and all executors and trustees
administering the estate and the accompanying trusts with an exception provided for
corporate trustees who would be entitled to "reasonable compensation." We find this
interpretation too broad.

 In deriving May Glen's intent, it is clear from reading her will that she did not intend
to compensate her husband for administering the estate and trusts in the event that she
predeceased him. However, May Glen did not specifically address the situation where one
individual who is not her spouse administers the estate and trusts. She merely addresses
the situation where an individual is named co-trustee with her husband. We agree with
appellant that the clause the trial court heavily relied upon merely serves to remedy
typographical errors in the will when referring to multiple parties so as to prevent a
reviewing court from determining that the will is ambiguous. If May Glen had intended to
preclude compensation to all executors and trustees, as the trial court determined, then
she could have (1) used the singular form of the word "trustee" rather than the plural "Co-Trustees," (2) included a provision stipulating that all references to Trustees and Executors
in the plural number shall also include the singular number, or (3) explicitly precluded
compensation to executors in the will. See Eisen v. Capital One, N.A., 232 S.W.3d 309,
314 (Tex. App.-Beaumont 2007, pet. filed) ("If Eisen had intended that each trust was to
have more than one 'beneficiary' . . . he could have used the plural form of the word
('beneficiaries') rather than the singular ('beneficiary') in Article IX."). However, May Glen's
will does not contain such language. Therefore, we conclude that May Glen's will only
forbids compensation to co-trustees who serve with her husband. We further conclude that
the will is silent as to Bigbee's compensation as the sole executrix of the Castleberry estate
and the sole trustee of the Castleberry trusts. 

III. The "preclusive effect" of the rule 11 agreement We now address Bigbee's third issue, but only as it pertains to her first issue. 
Bigbee argues that the compensation issue was not raised or considered by the parties
when the agreement was entered into and that the agreement does not explicitly preclude
compensation to be paid to Bigbee. Conversely, Dale asserts, without citing relevant
authority, that Bigbee's entitlement to compensation as executrix and trustee is precluded
by the Rule 11 Agreement. Despite this fact, we will nevertheless examine the potential
preclusive effect of the Rule 11 Agreement and the statements made at the August 17,
2005 hearing.

 Dale appears to rely heavily on the following language contained in the Rule 11
Agreement: "1. All claims dismissed with prejudice against the other party." However,
Dale has erroneously relied upon this provision of the Rule 11 Agreement to support his
contention that Bigbee is precluded from receiving compensation. 

 Texas courts have uniformly limited the effect of a release to a claim only where the
releasing instrument (i.e. the Rule 11 Agreement) mentions the claim to be released. Vela
v. Pennzoil Producing Co., 723 S.W.2d 199, 204 (Tex. App.-San Antonio 1986, writ ref'd
n.r.e.) (citing Baker v. City of Fort Worth, 210 S.W.2d 564, 567-68 (1948); Houston Oilers,
Inc. v. Floyd, 518 S.W.2d 836, 838 (Tex. Civ. App.-Houston [1st Dist.] 1975, writ ref'd
n.r.e.); Loy v. Kuykendall, 347 S.W.2d 726, 728 (Tex. Civ. App.-San Antonio 1961, writ
ref'd n.r.e.)). Any claims not clearly within the subject matter of the release are not
discharged, even if such claims existed at the time the release was executed. Victoria
Bank & Trust Co. v. Brady, 811 S.W.2d 931, 938 (Tex. 1991); Vela, 723 S.W.2d at 204.

 The only claims pending when the Rule 11 Agreement was executed, and,
moreover, the only claims clearly related were Dale's claims of (1) breach of trust and duty
of loyalty, (2) breach of the duty of full disclosure, and (3) Kinzbach liability against Bigbee
and Bigbee's bad faith counterclaim against Dale. The record reflects that the parties
intended only for these claims to be dismissed. (11) The record further reflects that no
applications for attorneys' fees, accounting fees, or commissions were pending when the
parties filed the Rule 11 Agreement on September 16, 2004. In fact, Bigbee did not file an
application for compensation until October 6, 2005. Moreover, the Rule 11 Agreement
does not specifically refer to Bigbee's entitlement to compensation. Therefore, because
the Rule 11 Agreement does not contain a provision precluding Bigbee from receiving
compensation for her service as executrix and sole trustee of the Castleberry trusts and
because Bigbee filed an application for compensation after the parties executed the Rule
11 Agreement, we conclude that Bigbee's entitlement to compensation was not within the
purview of the Rule 11 Agreement. As a result, the Rule 11 Agreement did not have
preclusive effect on Bigbee's entitlement to compensation. 


IV. Bigbee's compensation


A. Compensation for an executrix when the underlying will is silent

 It has long been the rule in Texas that testators may specify the commission to be
paid under a will or allow the commission amount to be determined by statute. In re Estate
of Roots, 596 S.W.2d 240, 243 (Tex. App.-Amarillo 1980, no writ) (citing Ben G. Sewell
& Paul W. Nimmons, Jr., The Executor's and Administrator's Statutory Compensation in
Texas, 3 St. Mary's L.J. 1 (1971)); see Lipstreu v. Hagan, 571 S.W.2d 36, 38 (Tex. Civ.
App.-San Antonio 1978, writ ref'd n.r.e.) ("[I]t is generally held that in the absence of a
testamentary provision providing for compensation of the personal representative his right
to compensation arises from, and is controlled by, statute."). In situations where a will does
not set compensation, section 241 of the Texas Probate Code governs the compensation
of executors of an estate. Lee v. Lee, 47 S.W.3d 767, 776 (Tex. App.-Houston [14th Dist.]
2001, pet. denied) ("Because it provides for a standard fee, section 241 applies in
situations where the will does not set compensation, and the executor seeks compensation
in the statutory amount or for a greater amount.") (citing Weatherly v. Martin, 754 S.W.2d
790, 793-94 (Tex. App.-Amarillo 1988, writ denied); see Tex. Prob. Code Ann. § 241
(Vernon 2003). Section 241(a) provides, in relevant part:

 (a) Executors . . . shall be entitled to receive a commission of five per
cent (5%) on all sums they may actually receive in cash, and the same per
cent on all sums they may actually pay out in cash, in administration of the
estate on a finding by the court that the executor or administrator has taken
care of and managed the estate in compliance with the standards of this
code . . . .


Tex. Prob. Code Ann. § 241. This statutory amount has been held to represent a fair and
reasonable compensation. Lee, 47 S.W.3d at 775 (citing In re Estate of Roots, 596
S.W.2d at 243). The last sentence of section 241, however, provides that the "court may,
on application of an interested person or on its own motion, deny a commission allowed
by this subsection in whole or in part if (1) the court finds that the executor or administrator
has not taken care of and managed estate property prudently." Tex. Prob. Code Ann. §
241; see Lee, 47 S.W.3d at 776. On appeal, Dale asserts that Bigbee has mismanaged
the estate. However, the parties' Rule 11 Agreement dismisses with prejudice Dale's
claims for breach of trust and duty of loyalty, Kinzbach liability, and breach of the duty of
full disclosure. Furthermore, the record does not contain a finding by the trial court that
Bigbee did not manage the estate property prudently. Based on the foregoing, we
conclude that Bigbee is entitled to statutory compensation in accordance with section 241
of the probate code.

B. Compensation for a trustee when the underlying will is silent

 When a will is silent as to compensation for sole trustees, we must review the
statutory compensation scheme afforded by section 114.061 of the Texas Property Code. 
See Tex. Prop. Code Ann. § 114.061(a) (Vernon 2007); see also Nacol v. McNutt, 797
S.W.2d 153, 155 (Tex. App.-Houston [14th Dist.] 1990, writ denied) ("[A] trustee is, after
all, presumptively entitled to reasonable compensation for her services.") (citing Tex. Prop.
Code Ann. § 114.061(a)). Section 114.061 provides, in pertinent part:

 (a) Unless the terms of the trust provide otherwise and except as
provided in Subsection (b) of this section, the trustee is entitled to reasonable
compensation from the trust for acting as trustee.

 

 (b) If the trustee commits a breach of trust, the court may in its
discretion deny him all or part of his compensation.


Tex. Prop. Code Ann. § 114.061(a). On appeal, Dale alleges that Bigbee committed a
breach of trust. However, the record reflects that Dale's claim against Bigbee for breach
of trust was dismissed with prejudice in accordance with the parties' Rule 11 Agreement. 
In addition, the record is devoid of a finding by the trial court that Bigbee committed a
breach of trust. We therefore conclude that Bigbee is entitled to "reasonable
compensation from the trust for acting as trustee," in accordance with section 114.061(a)
of the Texas Property Code. See id. Accordingly, we sustain Bigbee's first issue.

V. Conclusion

 Having sustained Bigbee's first issue on appeal, we need not address her remaining
issues. Tex. R. App. P. 47.1. Accordingly, we reverse the judgment of the trial court and
remand for proceedings consistent with this opinion.



 ___________________________

 DORI CONTRERAS GARZA,

 Justice

 

Memorandum Opinion delivered and 

filed this the 17th day of January, 2008. 
1. A claim for breach of trust is akin to a claim for breach of fiduciary duty action. See Burrow v. Arce,
997 S.W.2d 229, 240 (Tex. 1999) (holding that a client need not prove actual damages to obtain forfeiture of
attorney's fee for the attorney's breach of fiduciary duty to the client, relying, inter alia, on the general rule for
breach of trust); see also Kline v. O'Quinn, 874 S.W.2d 776, 786 (Tex. App.-Houston [14th Dist.] 1994, writ
denied) (noting that a fiduciary relationship is said to exist when one person has a duty to act for or give advice
for the benefit of another). The elements of a breach of fiduciary duty action are: (1) a fiduciary relationship
between the plaintiff and defendant; (2) the defendant must have breached its fiduciary duty to the plaintiff;
and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant. Punts v. Wilson,
137 S.W.3d 889, 891 (Tex. App.-Texarkana 2004, no pet.).


 Kinzbach liability refers to instances where a fiduciary "takes any gift, gratuity, or benefit in violation
of his duty, or acquires any interest adverse to his principal, without a full disclosure," which amounts to "a
betrayal of his trust and a breach of confidence, and he must account to his principal for all he has received." 
Kinzbach Tool Co. v. Corbett-Wallace Corp., 160 S.W.2d 509, 514 (Tex. 1942) (quoting United States v.
Carter, 217 U.S. 286, 306 (1910)).
2. The parties note that David Castleberry has not objected at any time to any actions taken by Bigbee
as executor of the estate or trustee of the Castleberry trusts. Moreover, it is undisputed that Ron Bigbee has
protected David Castleberry's interests under a power of attorney. David Castleberry is not a party to this
appeal.
3. In this motion, Dale moved the court to incorporate the Rule 11 Agreement into the trial court's final
judgment. Dale also alleged two additional causes of action: (1) common law fraud, and (2) breach of
contract pertaining to allegations that Bigbee knowingly made false representations and concealed material
information to induce Dale to enter into the Rule 11 Agreement and, therefore, breached the Rule 11
Agreement.
4. In its order, the trial court held that: (1) the figure of $584,906.00 set out in paragraph 8 of the Rule
11 Agreement should be $548,906.00; (2) Bigbee is to liquidate the remaining assets referenced to in the Rule
11 Agreement within ten days from entry of the Order and to distribute the funds to the three beneficiaries
listed, in one-third equal shares, as soon as possible; (3) payment of reasonable expenses to wind up the
estate and those expenses to be withheld must be made and approved by the court; (4) there has been no
resolution on the distribution of May Glen Castleberry's personal property; and (5) the parties must discuss
the distribution of approximately $6,000 remaining in the Castleberry Family Irrevocable Life Insurance Trust. 

5. Bigbee included in this motion a request for commission from the estate under section 241 of the
Texas Probate Code and a request for commission from the Donald Ray Castleberry Marital Trust ("DRC
Marital Trust") under section 114.061 of the Texas Property Code. See Tex. Prob. Code Ann. § 241 (Vernon
2003); Tex. Prop. Code Ann. § 114.061 (Vernon 2007).
6. In his objections to Bigbee's attempt to seek compensation, Dale asserted "(1) the claim was
precluded by the Rule 11 Settlement Agreement, Bigbee's representations at the August 17, 2005 hearing
and the Court's Order of September 28, 2005; and (2) alternatively, the wills precluded compensation under
either § 241 of the Probate Code (for the estate) or § 114.061 of the Property Code (for the DRC Marital
Trust)."
7. In its letter ruling, the trial court noted:


 As I stated in Court, at first blush, I felt that the wording of the Will expressly avoided
reference to an Alternate Executor, or as in this case, an Alternate Executrix.

 

 The trial court further noted:


 After reviewing the Will carefully, I found the last paragraph of Section V(D) to be
dispositive of my decision. That paragraph reads: 'For all intents and purposes in this Will
all references to Trustee and Executor in the singular number shall include the plural
number.' That phrase, considered with the fact that it is clear that it was the Testatrix' intent
that Co-Trustees serve without compensation, lead me to conclude that it was the Testrix'
intent that all Executors and Alternative Executors serve without compensation.


 . . . .

 

 I must admit to feeling that this is unfair to the Trustee/Executrix. It seems very clear
to me that she has undergone untold stress in her undertaking to do the work her mother
wanted her to do. Nevertheless, I feel that the construction that I have given this provision
reflects the intent of the Testatrix.
8. In its August 16, 2006 order, the trial court ordered Bigbee to "withhold estimated expenses in the
amount of $87,000.00 . . . from the remaining assets listed as '$1,393,000' in paragraph 11 of the parties [sic]
Rule 11 Agreement" and deliver "Roger Dale Castleberry's one-third share of the balance of the remaining
assets (reported to be $766,741.00 as of August 11, 2006) . . . to the trusts set up for Roger Dale Castleberry
. . . ."
9. The record does not contain a copy of Donald Ray Castleberry's will, but it is undisputed that his will
is virtually identical to May Glen's will. We will examine May Glen's will as it addresses compensation for
executors and trustees.
10. This intent is clearly demonstrated in the section of May Glen's will entitled, "Appointment of
Trustees" whereby May Glen provided: "So long as my husband shall continue to serve as Co-Trustee, there
shall be two trustees."


 In addition, our interpretation of the term co-trustee coincides with the ordinary legal meaning of the
word. Black's Law Dictionary defines "cotrustee" as "[o]ne of two or more persons in whom the administration
of a trust is vested." Black's Law Dictionary 284 (7th ed. 2000) (emphasis added). 

11. In the Rule 11 Agreement, the parties did not include language dismissing with prejudice any future
claims either party may have.