

**NUMBER 13-10-00129-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

| | |
|---|---|
| **MARY FEILD JARVIS,** | **Appellant,** |
| **v.** | |
| **FRANK EWING FEILD AND JOHN SHAW FEILD,** | **Appellees.** |

**On appeal from the County Court at Law No. 1
of Cameron County, Texas.**

**O P I N I O N**

**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Opinion by Chief Justice Valdez**

This dispute pertains to the accounting and distribution of the estate of Caroline P. Feild, deceased. Appellant, Mary Feild Jarvis, appeals from an "Order Approving Account for Final Settlement" signed by the trial court on February 23, 2010. By four issues, Jarvis, advancing pro se, argues that: (1) the trial court did not have jurisdiction over this case; (2) the trial court erroneously approved an incomplete inventory of the

estate's assets; (3) the trial court erroneously approved of inaccurate market value assessments of real property contained in the estate; and (4) the trial court's final division of the estate's real property conflicts with Caroline's intent, as expressed in her "Last Will and Testament."  We affirm.

## I. BACKGROUND

In 2003, Jarvis filed a petition in Cameron County, Texas, to be designated Caroline's guardian.  The trial court appointed Jarvis as Caroline's guardian from 2007 until Caroline's death in the state of Washington on May 2, 2008.  A final accounting to close the guardianship case was filed by Jarvis in the Cameron County Court of Law No. 1.

On May 23, 2008, co-appellee, Frank Feild,[1] filed an application to probate Caroline's will and letters of independent executor in the Cameron County court.  The application noted that Jarvis resides at 1892 Birch Avenue in Richland, Washington, and that she should be served through her resident agent, Ramona Kantack Alcantara, her attorney from the guardianship case, in Brownsville, Texas.  Service of citation was issued to Jarvis on May 27, 2008, through Alcantara.  The citation indicates that Alcantara accepted service on Jarvis's behalf.  Subsequently, on June 5, 2008, an attorney from Alcantara's law firm filed an answer and objection to Frank's application for probate on Jarvis's behalf.  In her sole objection, Jarvis argued that all real property in the estate should be appraised or assigned a fair market value "by an individual qualified to make such an analysis" prior to the distribution.

---

[1] In a later-filed affidavit, Frank stated that he is domiciled in Darien, Georgia, and that the other beneficiary under Caroline's will, Jarvis and Frank's brother, co-appellee, John Shaw Feild, is domiciled in St. Petersburg, Florida.

2

On June 24, 2008, the trial court conducted a hearing on Frank's application and letters of independent executor and signed an order appointing Frank as executor of the estate, as designated by Caroline in her will. The trial court also concluded that "it has jurisdiction and venue over this estate." On October 5, 2009, Frank filed an inventory and appraisal of all real property contained in the estate. In this filing, Frank outlined all of the contents of the estate and determined that, after $75,322.77 in disbursements was deducted from the value of the estate, the value of the property and cash in the estate was $363,185.18. The trial court approved the inventory and appraisals on October 19, 2009.

The following day, Jarvis sent the trial court a letter alleging that several items contained in the estate were not listed in the inventory and were missing. Shortly thereafter, Frank filed an "Account for Final Settlement," which included additional receipts and disbursements and which requested the sale and equal distribution of proceeds amongst the beneficiaries of real property located in Brownsville at 1144 Camwood Place in the Woodlands Park II Subdivision, Lot 23. Jarvis was to be awarded real property located at 1185 Parkwood Place in the Woodlands Park II Subdivision, Lot 18, in Brownsville. Frank was to be awarded a one-half share in property located at 1174 Camwood Street in Brownsville and 440 E. Brushy Valley Drive in Knoxville, Tennessee, and $11,499.28 in cash.[2] Meanwhile, John was to be awarded the remaining one-half share for 1174 Camwood Street and 440 E. Brushy Valley Drive, another piece of real property located in Presidio County, Texas, valued at $4,200, and $9,494.28 in cash. Based on the appraisals obtained for each of the

_____

[2] According to Jarvis, the Tennessee property consists of ninety-seven acres of land.

properties, Frank asserted that each of the beneficiaries would receive equal shares of the estate, each valued at $89,175.

The trial court scheduled the matter for a hearing on January 26, 2010. On January 12, 2010, Jarvis sent a letter protesting the "Account for Final Settlement" and alleging that the division of the estate's assets was inequitable. She argued that the real property awarded to her had purportedly already been sold to someone else, the Tennessee property was valued at $2.2 million, and she would not accept "encumbered properties as [her] portion of the Estate." She continued, "I will accept my fair portion of the Estate's worth in United States dollars. For fairness, all properties held by the Estate (real estate and other) should be immediately sold at fair market prices and the monies realized divided among the three heirs."[3] In light of this letter and because all interested parties were out of town and not able to attend the previously scheduled January 26, 2010 hearing, Frank filed a motion for continuance, and the trial court re-set

---

[3] John filed several letters with the trial court contesting Jarvis's assessment of the situation. John alleged that Jarvis was estranged from the family and had depleted the value of much of the estate in the one year that she served as Caroline's guardian. John also described the property that Jarvis was awarded as follows:

> The house located at 1185 Parkwood Place, Brownsville, Texas[,] was occupied and insured until Mary [Feild] Jarvis evicted Inez Salas and left the property to be vandalized. Over $8,000 in damages were done to the property. Frank E. Field [sic] secured the house, creating an asset rather than a liability. He sold it at an excellent price[,] which created an income for his sister. The note can be sold to a 3rd party if she so desires.

With regard to the Tennessee property, John stated that:

> The "Noncertified Appraisal" dated 2007 was not disclosed on the final account of Mary Field [sic] Jarvis and her figure of $2,200,000 makes a mockery of this court. In 2003, a neighbor offered $70,000. The topography of the property [is] almost straight up and down and it does not lend itself to development or even a 3-way division. . . . It was in our family in the 1800's[,] and it was Caroline's intention that it remains as such. . . . If Mary Field [sic] Jarvis is not willing to accept the appraised value which, once again, she did not contest at the time of the final accounting, I recommend that she pay for her own independent and certified appraisal of the property at her own expense.

4

the hearing on the "Account for Final Settlement" for February 23, 2010. The trial court sent notice that the hearing was re-set for February 23, 2010 to all interested parties.

At the final hearing on this matter, the trial court was advised of an objection Jarvis made regarding the valuation of the property located in Tennessee.[4] Frank responded by providing documentation from the Knox County, Tennessee appraisal district valuing the property at $108,500, of which the trial court took judicial notice. The trial court signed an order approving of Frank's "Account for Final Settlement." It is from this order that Jarvis now appeals.

## II. JURISDICTION AND VENUE

By her first issue, Jarvis asserts that the trial court did not have jurisdiction over this matter pursuant to section six of the Texas Probate Code, the venue statute. *See* TEX. PROB. CODE ANN. § 6 (Vernon 2003).[5] She also asserts that she was not notified of

---

[4] Apparently, Jarvis did not attend the February 23, 2010 hearing. Furthermore, the record does not contain a reporter's record for the February 23, 2010 hearing, or any other hearing conducted in this matter. In her docketing statement filed with this Court, Jarvis represented that no reporter's record was made for any of the hearings in this matter. This statement is dubious in light of the fact that counsel for appellees included an excerpt from the reporter's record from the February 23, 2010 hearing. Though we recognize that documents solely appearing in the appendix of an appellate brief are not part of the record and are generally not considered on appeal, *see Till v. Thomas*, 10 S.W.3d 730, 733-34 (Tex. App.– Houston [1st Dist.] 1999, no pet.), it is noteworthy that the transcript reflects that Jarvis was provided notice by appellees' counsel and by the trial court, and the trial court specifically noted that "[s]he [Jarvis] knows that she was supposed to be here." In addition, Jarvis admits in her reply brief that she received "an 'Order' titled 'Motion for Continuance' from the Cameron County court, which said it [the final hearing] would be heard on February 23, 2010; however, it did not summon me to be present, state the nature of the hearing, nor provide any documents."

[5] Section six of the probate code, entitled "Venue for Probate of Wills and Administration of Estates of Decedents," provided the following, in relevant part:

Wills shall be admitted for probate, and letters testamentary or of administration shall be granted:

(a) In the county where the deceased resided, if he had a domicile or fixed place of residence in this State.

(b) If the deceased had no domicile or fixed place of residence in this State but died in this State, then either in the county where his principal property was at the time of his death, or in the county where he died.

5

the trial court's intention to exercise jurisdiction over this matter and that, because Caroline resided in Benton County, Washington, at the time of her death, the will should have been probated in the state of Washington. Frank and John counter by arguing that Jarvis waived this issue by failing to specify such arguments in her notice of appeal.[6] In the alternative, Frank and John argue that the trial court had jurisdiction over this matter because Caroline had property and her will was executed in Cameron County. Frank and John contend that prior to her death, Caroline was declared incapacitated and therefore did not have the competency to declare the state of Washington her domicile. They further contend that the trial court had continuing jurisdiction over this matter because it had earlier determined that Caroline was incapacitated. With respect to Jarvis's notice argument, Frank and John assert that Jarvis was served through her attorney, Ramona Kantack Alcantara, and that her attorney filed an answer and objection on her behalf in this matter.

---

(c) If he had no domicile or fixed place of residence in this State, and died outside the limits of this State, then in any county in this State where his nearest of kin reside.

(d) But if he had no kindred in this State, then in the county where his principal estate was situated at the time of his death. . . .

TEX. PROB. CODE ANN. § 6 (Vernon 2003). Although much of the probate code was amended or repealed in 2009, section six remains in effect, though it is scheduled to be renumbered as section six in the Texas Estates Code on January 1, 2014. *See* Act of June 19, 2009, 81st Leg., R.S., ch. 680, § 2, 2009 Tex. Gen. Laws 1511, 1726 (current version at TEX. PROB. CODE ANN. § 6).

[6] We reject Frank and John's waiver contention as it relates to appellant's notice of appeal. Texas Rule of Appellate Procedure 25.1(d) describes the required contents for a proper notice of appeal. Specifically, rule 25.1(d) provides that, among other things, the notice of appeal: (1) "identify the trial court and state the case's trial court number and style"; (2) "state the date of the judgment or order appealed from"; (3) "state that the party desires to appeal"; (4) "state the court to which the appeal is taken . . ."; and (5) "state the name of each party filing the notice." TEX. R. APP. P. 25.1(d). Rule 25.1(d) does not require Jarvis to clearly articulate her specific appellate arguments in her notice of appeal to prevent waiver. *See id.* Moreover, Frank and John have not cited any authority supporting their contention. Based on our review of the record, we conclude that Jarvis's notice of appeal complies with rule 25.1(d) and that she properly asserted her arguments in her appellate brief. *See id.*

## A. Subject-Matter Jurisdiction

The crux of Jarvis's first issue centers on venue. However, to the extent Jarvis argues that the Cameron County trial court lacked subject-matter jurisdiction over this case, she has not adequately explained this contention while tying the facts to relevant authority pertaining to jurisdictional concepts. *See* TEX. R. APP. P. 38.1(i). Jarvis repeatedly argues that the probating of Caroline's will should have taken place in the state of Washington, an argument which we construe as pertaining to venue. Nevertheless, the Texas Supreme Court has held that we are "*obliged* to ascertain that subject[-]matter jurisdiction exists regardless of whether the parties have questioned it." *Univ. of Tex. Sw. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 358 (Tex. 2004) (emphasis in original) (citing *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 853-54 (Tex. 2000)). Thus, we have a duty to determine whether the Cameron County court had subject-matter jurisdiction over this matter. Based on our review of the record, we believe that the Cameron County Court of Law No. 1 had subject-matter jurisdiction over the probating of Caroline's will because a portion of Caroline's estate is situated in Cameron County. *See* TEX. PROB. CODE ANN. § 4 (Vernon 2003) ("The county court shall have the general jurisdiction of a probate court. It shall probate wills, grant letters testamentary . . . and transact all business appertaining to estates subject to administration, including the settlement, partition, and distribution of such estates."); *id.* § 5(f) (Vernon 2003) ("All courts exercising original probate jurisdiction shall have the power to hear all matters incident to an estate."); *id.* § 5A(a) (Vernon 2003) ("In proceedings in the constitutional county courts and statutory county courts at law, the phrases 'appertaining to estates' and 'incident to an estate' in this Code include the

7

probate of wills, the issuance of letters testamentary and of administration . . . and generally all matters relating to the settlement, partition, and distribution of estates of deceased persons."); *see also English v. Cobb*, 593 S.W.2d 674, 676 (Tex. 1979) (stating that an action incident to an estate is one in which the outcome will have direct bearing on collecting, assimilating, or distributing the decedent's estate).

## B. Venue

In making her venue argument, Jarvis cites authority addressing jurisdictional arguments to contend that section six of the probate code mandated that the estate be probated in the state of Washington. *See id.* Venue and jurisdiction are two distinct concepts, and it appears that Jarvis, in her appellate brief, conflates the two concepts. *Reliant Energy, Inc. v. Gonzalez*, 102 S.W.3d 868, 871 (Tex. App.–Houston [1st Dist.] 2003), *aff'd*, 159 S.W.3d 615 (Tex. 2005) ("Jurisdiction concerns the *power of a court*, under the Constitution and laws, *to determine the merits of an action* as between the parties and to render a judgment. . . . Venue concerns the propriety of prosecuting a suit involving a given subject matter and specific parties *in a particular county*.") (Emphasis in original). Based on our review of Jarvis's appellate briefs, it is clear that the thrust of her first argument is that the Cameron County court was an inappropriate venue for this matter. Accordingly, we will analyze her first issue with respect to venue.

The record does not contain a written motion arguing that the Cameron County court was an improper venue in this matter. Jarvis acquiesced to the probating of the will in Cameron County until the trial court signed the final order, which, as she alleges, resulted in her being disinherited. She did not object to Cameron County court as being an improper venue until she filed her appeal with this Court.

8

Texas Rule of Civil Procedure 86(1) provides that an objection to improper venue is waived if not made by written motion filed prior to or concurrently with any other plea, pleading, or motion, except a special appearance motion provided for in rule 120a. *See* TEX. R. CIV. P. 86(1); *see also Graybar Elec. Co. v. Gonzalez (In re Graybar Elec. Co.)*, Nos. 13-08-00073-CV, 13-08-00294-CV, 13-08-00333-CV, 13-08-00341-CV, 2008 Tex. App. LEXIS 6868, at *45 (Tex. App.–Corpus Christi Aug. 26, 2008, no pet.) (mem. op.). Even though it appears that appellant may have advanced pro se for some of the proceedings below, her pro se status does not relieve her from complying with applicable laws and rules of procedure. *See Green v. Kaposta*, 152 S.W.3d 839, 841 (Tex. App.–Dallas 2005, no pet.); *see also Siddiqui v. Siddiqui*, No. 14-07-00235-CV, 2009 Tex. App. LEXIS 1443, at *4 (Tex. App.–Houston [14th Dist.] Mar. 3, 2009, pet. denied) (mem. op.) ("While we have compassion for the plight of the pro se litigant attempting to follow the rules of legal procedure and substantive law, and therefore construe pro se pleadings and briefs liberally, we must still hold appellant to the same standard as a licensed attorney, requiring that he follow those same rules and laws . . . . To do otherwise would give a pro se litigant an unfair advantage over a litigant represented by counsel."). Therefore, because Jarvis did not make a written objection to the Cameron County court as an improper venue for the probating of Caroline's will until she filed her appeal, we conclude that her venue argument is waived. *See* TEX. R. CIV. P. 86(1); *see also Graybar Elec. Co.*, 2008 Tex. App. LEXIS 6868, at *45.

**C. Notice and Personal Jurisdiction**

Jarvis also argues that the Cameron County court lacked personal jurisdiction over her because she did not receive notice of the various filings and hearing in this

9

matter. Jarvis's claims—that she did not receive notice of the various hearings and pleadings filed in this case and that she was not properly served—constitute a challenge to the court's personal jurisdiction over her. *See Furst v. Smith*, 176 S.W.3d 864, 868 (Tex. App.–Houston [1st Dist.] 2005, no pet.); *see also Houston Precast, Inc. v. McAllen Constr. Inc.*, No. 13-07-135-CV, 2008 Tex. App. LEXIS 7129, at *3 (Tex. App.–Corpus Christi Sept. 25, 2008, no pet.) (mem. op.). Whether the Cameron County court had personal jurisdiction over Jarvis is a question of law. *See Coronado v. Norman*, 111 S.W.3d 838, 841 (Tex. App.–Eastland 2003, pet. denied); s*ee also Houston Precast, Inc.*, 2008 Tex. App. LEXIS 7129, at *3. Personal jurisdiction is composed of two elements: (1) the defendant must be amenable to the jurisdiction of the court; and (2) if the defendant is amenable to the jurisdiction of the court, the plaintiff must validly invoke that jurisdiction by valid service of process on the defendant. *Coronado*, 111 S.W.3d at 841 (citing *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 200 (Tex. 1985)). When a defendant has not answered, a trial court acquires jurisdiction over that defendant solely on proof of proper service. *See Furst*, 176 S.W.3d at 868; *see also Houston Precast, Inc.*, 2008 Tex. App. LEXIS 7129, at *3.

There are no presumptions in favor of valid issuance, service, and return of citation, and a failure to affirmatively demonstrate strict compliance with the rules of civil procedure renders an attempted service of process invalid and of no effect. *See Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990); *Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 885 (Tex. 1985) (per curiam); *see also Furst*, 176 S.W.3d at 869; *All Commercial Floors, Inc. v. Barton & Rasor*, 97 S.W.3d 723, 726 (Tex. App.–Fort Worth 2003, no pet.). An appellant may raise a defect in service for the first time on

10

appeal.  *All Commercial Floors, Inc.*, 97 S.W.3d at 725 (citing *Wilson*, 800 S.W.2d at 836-37).

In support of her contentions, Jarvis asserts that the Kantack Alcantara Law Office, P.C. only had a contract to represent her during the earlier guardianship proceedings, not the proceedings pertaining to the probating of Caroline's will. Nevertheless, the record does not include a copy of the contract between the law firm and appellant regarding representation.  Appellant relies solely on her bald assertions that the law firm did not represent her in this matter, even though the record:  (1) contains filings (an answer and objection to Frank's probate application) made by the law firm on Jarvis's behalf; (2) indicates that the law firm accepted service on Jarvis's behalf; and (3) contains the trial court's note that Jarvis received notice of the various filings and hearings in this matter.  *See Furst*, 176 S.W.3d at 868; *see also Houston Precast, Inc.*, 2008 Tex. App. LEXIS 7129, at *3.  Jarvis argues that section 128A of the probate code entitled her to personal service of all filings and notices in this case.  *See* TEX. PROB. CODE ANN. § 128A(a) (Vernon 2003).  Section 128A, however, does not support Jarvis's argument because it pertains to notice to "the state, a governmental agency of the state, or a charitable organization" regarding a will admitted to probate. *See id.*  Her status in this case does not fall within the purview of section 128A.  *See id.*

Jarvis also argues that sections 33(f)(1) and 407(1) of the probate code required personal service.  *See id.* §§ 33(f)(1), 407(1) (Vernon 2003).  Section 33(f)(1) provides that "[w]here it is provided that personal service shall be had with respect to a citation or notice, any such citation or notice must be served upon the attorney of record for the person to be cited."  *Id.* § 33(f)(1).  Section 407(1) pertains to the presentation of

11

account for final settlement and requires that "notice shall be given by the personal representative to each heir or beneficiary of the decedent by certified mail, return receipt requested, unless another type of notice is directed by the court by written order." *Id.* § 407(1).

Here, notice was sent by certified mail to Jarvis's attorney at the Kantack Alcantara Law Office, P.C. As a result of the notice, the law firm filed an original answer and objection on Jarvis's behalf, to which Jarvis did not object. *See Baker v. Monsanto Co.*, 111 S.W.3d 158, 160 (Tex. 2003) (stating that the filing of an answer constitutes a general appearance, which submits a defendant to the jurisdiction of the court for all purposes); *see also Boyes v. Morries, Polich & Purdy, LLP*, 169 S.W.3d 448, 455 (Tex. App.–El Paso 2005, no pet.) (same). The record reflects that all notices were sent by certified mail to the law firm, who appears to be registered as appellant's agent for service of process. Later, Jarvis filed several letters with the trial court at or near the time various hearings were conducted or orders signed, which indicates that she received notice of the various filings and hearings. Furthermore, Jarvis admits on appeal that she received notice of the final February 23, 2010 hearing, but she did not think that she was required to attend. She also complains that the estate declined to pay her expenses to travel to Cameron County for the various hearings, which suggests that she made a conscious choice to not attend the hearings because she did not believe that her expenses would be paid for by the estate. Finally, the trial court noted Jarvis's objections to the appraised value of the Tennessee property that she had repeatedly raised in earlier-filed letters, which demonstrates that her concerns were considered by the Cameron County court.

Based on our review, the record demonstrates that: (1) Jarvis received notice of the various hearings and pleadings, as evidenced by her letters sent in response to such filings and setting; (2) the Kantack Alcantara Law Office, P.C. represented Jarvis in the probate proceedings and was her registered agent for service of process; and (3) Jarvis was not harmed in this matter because the trial court considered her complaints regarding the appraised value of the Tennessee property. We therefore conclude that Jarvis has not satisfied her burden of demonstrating that the Cameron County court lacked personal jurisdiction over her because of lack of notice or defective service.[7] *See Middleton*, 699 S.W.2d at 200; *Furst*, 176 S.W.3d at 868; *Coronado*, 111 S.W.3d at 841; s*ee also Houston Precast, Inc.*, 2008 Tex. App. LEXIS 7129, at *3. Accordingly, we overrule appellant's first issue.

### III. INVENTORY, APPRAISEMENT, AND FINAL SETTLEMENT OF THE ESTATE

In her second and third issues, Jarvis contends that the trial court "knowingly approved an incomplete inventory of real property [e]state assets, including real property, by the [e]xecutor" and "allowed inaccurate market value assessments of real property [e]state assets by the [e]xecutor." Jarvis alleges that Frank improperly included three properties in the inventory of the estate that were previously sold to third parties and intentionally "deflated estimates of real property values" so as to reduce her inheritance. She further alleges that the trial court "failed to hold the [e]xecutor financially or criminally responsible for selling [e]state real property, without prior Court approval," including the property located at 1185 Parkwood Place in Brownsville that

---

[7] It is also noteworthy that Jarvis did not file a special appearance in the Cameron County court challenging the Cameron County court's personal and subject-matter jurisdiction. *See* TEX. R. APP. P. 33.1; *Anchia v. DaimlerChrysler AG*, 230 S.W.3d 493, 500 n.1 (Tex. App.–Dallas 2007, pet. denied) (providing that special appearance issues not raised by an appellant to a trial court are generally waived on interlocutory appeal).

13

was awarded to her. Jarvis argues that the trial court was complicit in allowing for the valuation of the estate based on the inventory to be "grossly underestimated." Frank and John contend that Jarvis failed to preserve these issues because her notice of appeal specifically stated that she appealed the "Order Approving Account for Final Settlement," rather than the "Order Approving Inventory Appraisement[,] and List of Claims."

In her pro se notice of appeal, Jarvis states the following: "Mary (Maria) Feild Jarvis, Real Party Interest, desires to appeal and seek relief from the "Order Approving Account for Final Settlement" (Cause No. 2008-CPC-163-A) issued by presiding Judge MacDonald on February 23, 2010." As noted earlier, Texas Rule of Appellate Procedure 25.1(d)(2) requires appellant to "state the date of the judgment or order appealed from." TEX. R. APP. P. 25.1(d)(2); *see Dugan v. Compass Bank*, 129 S.W.3d 579, 581 (Tex. App.–Dallas 2003, no pet.). The record reflects that the inventory order and the final settlement order are two separate orders signed on different dates— October 19, 2009 and February 23, 2010, respectively. At no point in her notice of appeal does Jarvis specify that she was appealing from the "Order Approving Inventory Appraisement[,] and List of Claims."

In response to Frank and John's preservation arguments, Jarvis asserts that the inventory order and the "Order Approving Account for Final Settlement" are "linked documents" and that "the latter cannot exist without the former. Therefore, citation of the 'Order Approving Account for Final Settlement' in the 'Notice of Appeal' automatically places the 'Inventory, Appraisement[,] and List of Claims' [sic] under appeal." However, Jarvis does not cite any authority supporting this contention. *See*

14

TEX. R. APP. P. 38.1(i). Nevertheless, Texas courts have noted that the "disposing of appeals for harmless procedural defects is disfavored. That policy is reflected in Texas Rule of Appellate Procedure 38.1(f)[,] which provides that the statement of an issue will be treated as covering every subsidiary question that is fairly included." *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) (citing *Verburgt v. Dorner*, 959 S.W.2d 615, 616 (Tex. 1997)); *see* TEX. R. APP. P. 38.1(f). Further, "[a]ppellate briefs are to be construed reasonably, yet liberally, so that the right of appellate review is not lost by waiver. Simply stated, appellate courts should reach the merits of an appeal whenever reasonably possible." *Perry*, 272 S.W.3d at 587 (citing *El Paso Natural Gas v. Minco Oil & Gas, Inc.*, 8 S.W.3d 309, 316 (Tex. 1999); *Verburgt*, 959 S.W.2d at 616). Regarding appeals of probate orders, the Texas Supreme Court has stated that in probate proceedings, multiple judgments may be considered final for purposes of appeal on certain discrete issues. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192 (Tex. 2001) (citing *Crowson v. Wakeham*, 897 S.W.2d 779, 783 (Tex. 1995)[8]); *see also Brittingham-Sada de Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex. 2006) ("Probate proceedings are an exception to the 'one final judgment' rule; in such cases, 'multiple judgments final for purposes of appeal can be rendered on certain discrete issues.'")

---

[8] In *Crowson v. Wakeham*, the supreme court adopted the following test regarding the appealability of probate orders:

> If there is an express statute, such as the one for the complete heirship judgment, declaring the phase of the probate proceedings to be final and appealable, that statute controls. Otherwise, if there is a proceeding of which the order in question may logically be considered a part, but one or more pleadings also part of that proceeding raise issues or parties not disposed of, then the probate order is interlocutory. For appellate purposes, it may be made final by a severance order, if it meets the severance criteria, as did the order in the present case. . . . A severance order avoids ambiguities regarding whether the matter is appealable. Litigants can and should seek a severance order either with the judgment disposing of one party or group or parties, or seek severance as quickly as practicable after the judgment.

897 S.W.2d 779, 783 (Tex. 1995).

15

(quoting *Lehmann*, 39 S.W.3d at 192). However, "[n]ot every interlocutory order in a probate case is appealable . . . and determining whether an otherwise interlocutory probate order is final enough to qualify for appeal, have proved difficult." *Mackie*, 193 S.W.3d at 578. Assuming, without deciding, that the "Order Approving Inventory, Appraisement[,] and List of Claims" is an appealable order, we will analyze Jarvis's complaints pertaining to this order in the interest of justice and in accordance with supreme court directives that we should construe appellate issues liberally so that the right to appeal is not lost. *See Perry*, 272 S.W.3d at 587; *El Paso Natural Gas*, 8 S.W.3d at 316; *Verburgt*, 959 S.W.2d at 616; *see also* TEX. R. APP. P. 38.1(f).

In both her second and third issues, Jarvis complains about the appraisals of the property contained in Caroline's estate, which allegedly resulted in a decrease in the value of her inheritance, Frank's purported sale of several properties of the estate, and Frank's alleged intentional exclusion of items from the inventory of the estate. However, in her appellate briefs, Jarvis does not sufficiently argue or cite to evidence in the record showing that items contained in Caroline's estate were intentionally excluded from the inventory by Frank. *See* TEX. R. APP. P. 38.1(i). Moreover, she does not direct us to evidence contained in the record demonstrating that the properties in the estate were improperly sold or intentionally undervalued so as to reduce her inheritance. *See id.* Jarvis includes an internet listing in her appendix attached to her appellate brief; however, this listing has not been formally included in the record, nor does it conclusively demonstrate the true market value of the properties. *See Gonzalez v. Villarreal*, 251 S.W.3d 763, 777 n.17 (Tex. App.–Corpus Christi 2008, pet. dism'd w.o.j.) (holding that the attachment of documents as exhibits or appendices to appellate briefs

16

is not formal inclusion in the appellate record); *Nguyen v. Intertex, Inc.*, 93 S.W.3d 288, 293 (Tex. App.–Houston [14th Dist.] 2002, no pet.) (same); *Till v. Thomas*, 10 S.W.3d 730, 733-34 (Tex. App.–Houston [1st Dist.] 1999, no pet.) (same). The record contains appraisals for each of the properties listed in the inventory, and the market values stated in the appraisals were used to compute the value of Caroline's estate and the portion of the estate each of the heirs would receive. In fact, the Tennessee property, which is the focus of the appraisal dispute, was appraised by the Knox County, Tennessee appraisal district and yielded an appraised value of $108,500. Jarvis has not submitted for inclusion in the record an appraisal disputing the $108,500 value calculated by the Knox County, Tennessee appraisal district. Based on this information, we cannot say that the trial court erred in approving of the appraisals provided.

Jarvis also contends that Frank improperly sold real property contained in the estate without the Cameron County court's approval. In making this contention, however, she does not cite to any portion of the record substantiating her claim. *See* TEX. R. APP. P. 38.1(i). In signing the "Order Approving Account for Final Settlement," the Cameron County court approved the sale of real property located at 1144 Camwood Place in Brownsville, with the proceeds of the sale intended "to pay any expenses or claims against [the] estate. Any funds left over will be distributed between the three heirs." Jarvis does not point us to evidence in the record demonstrating that the real property located at 1185 Parkwood Place, which was awarded to her, was sold prior to the probating of Caroline's will. In fact, a property search of the Cameron County Appraisal District's database—a copy of the property search is included in the record—shows that Jarvis has 100% ownership of real property located at 1185 Parkwood Place

17

in Brownsville, which undermines Jarvis's contention that the property had been sold and she only possessed a virtually valueless warranty deed.

In light of the foregoing, we cannot say that the Cameron County court erred in signing the "Order Approving Inventory, Appraisement[,] and List of Claims." Accordingly, we overrule Jarvis's second and third issues.

## IV. THE FINAL DISTRIBUTION OF THE ESTATE AND CAROLINE'S INTENT, AS EXPRESSED IN HER "LAST WILL AND TESTAMENT"

In her fourth issue, Jarvis asserts that the "Order Approving Account for Final Settlement" does not comport with Caroline's intent, as expressed in her "Last Will and Testament," which stated that each of the three heirs to the estate would receive equal shares of the estate. Specifically, Jarvis alleges that she received nothing of value from the estate and that Frank and John received property, including the Tennessee property, which purportedly has a "probable sale market values [sic] of greater than $4 [m]illion." Frank and John respond that the trial court did not err in approving the final distribution because it resulted in each of the heirs receiving an equal share of the estate, which reconciled with Caroline's intent, as expressed in her will.

In construing a will, the court's focus is on the testator's intent. *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000). Determining a testator's intent from the four corners of a will requires a careful examination of the words used. *Id.* If the will is unambiguous, a court should not go beyond specific terms in search of the testator's intent. *Id.* The testator's intention must be ascertained by viewing the will in its entirety. *Johnson v. McLaughlin*, 840 S.W.2d 668, 672 (Tex. App.–Austin 1992, no pet.); *Disabled Am. Veterans v. Mullin*, 773 S.W.2d 408, 410 (Tex. App.–San Antonio 1989, no pet.). "'If this [intent] can be ascertained from the language of the instrument [will],

18

then any particular paragraph of the will which, considered alone, would indicate a contrary intent, must yield to the intention manifested by the whole instrument.'" *Welch v. Straach*, 531 S.W.2d 319, 321 (Tex. 1975) (quoting *McMurray v. Stanley*, 69 Tex. 227, 6 S.W. 412, 413 (1887)); *Johnson*, 840 S.W.2d at 672; *Mullin*, 773 S.W.2d at 410. Absent ambiguity, the construction of a will is a matter of law, which we review de novo. *Armstrong v. Hixon*, 206 S.W.3d 175, 180 (Tex. App.–Corpus Christi 2006, pet. denied); *Penland v. Agnich*, 940 S.W.2d 324, 326 (Tex. App.–Dallas 1997, writ denied). An ambiguity exists only when the will uses a word that is open to more than one meaning. *Lang*, 35 S.W.3d at 639; *In re Estate of Hunt*, 908 S.W.2d 483, 484-85 (Tex. App.–San Antonio 1995, writ denied). Further, "courts must not redraft wills to vary or add provisions 'under the guise of construction of the language of the will' to reach a presumed intent." *Lang*, 35 S.W.3d at 639 (quoting *Shriner's Hosp. for Crippled Children of Tex. v. Stahl*, 610 S.W.2d 147, 151 (Tex. 1980)). We should only focus on the "meaning of the words she actually used." *Lang*, 35 S.W.3d at 639.

Jarvis's fourth issue focuses on the following provision from Caroline's will:

### III. DISPOSITION OF ESTATE

A. I give, devise[,] and bequeath all of the rest, residue[,] and remainder of my estate to my children, **FRANK E. FEILD, JOHN (JACK) FEILD, and MARY FEILD JARVIS**, in equal shares; provided, however, that if a child of mine shall not then survive me, but should leave issue then surviving me, such then surviving issue shall take, per stirpes, the share that such deceased child would have taken by surviving me, or if none if then living, then said share shall be distributed, in equal shares, to my then living children or their issue per stirpes, or if none of my descendants is then living, then said share shall be distributed as provided in the paragraph below.

(Emphasis in original). The clear and unambiguous language of Caroline's will provides that each of the children—Frank, John, and Jarvis—shall equally share the remainder of Caroline's estate upon her death, provided that each of the children survived Caroline, which was the case here. *See id.* The will also named Frank as executor of the estate. In his role as executor, Frank submitted an inventory and appraisal of the estate, which the trial court approved. In the inventory and appraisal, Frank stated that each of Caroline's children should receive an equal share of the estate valued at $89,175. Jarvis, in particular, was awarded real property located at 1185 Parkwood Place in Brownsville, which, according to the appraisals contained in the record, is valued at $89,175. Despite Frank's efforts, Jarvis sent letters to the Cameron County court objecting to her award of the real property located at 1185 Parkwood Place. Jarvis alleged that the property had been sold, and therefore, she was awarded property of no value. Despite this allegation, Jarvis does not direct us to evidence in the record demonstrating that the property she was awarded had indeed been sold.

Jarvis also objects to the market value appraisals obtained by Frank and approved of by the trial court.[9] Specifically, she complained about the appraisal of the Tennessee property obtained from the Knox County appraisal district. She believed that if the Tennessee property was appraised by a licensed real estate expert, the property would be valued at approximately $2.2 million. The "Order Approving Account

---

[9] The record reflects that the real property and the majority of Caroline's personal property was appraised and listed in the inventory and appraisals document filed by Frank and approved by the Cameron County court. *See* TEX. PROB. CODE ANN. § 248 (Vernon Supp. 2010) (providing that the court shall appoint disinterested persons to appraise the property contained in the estate). Clearly, Jarvis is unhappy with what she considers low appraisals of the real property contained in the estate and seems to suggest that appraisals of the property should continue until she receives a valuation of the property to her liking. It appears that Jarvis also asserts that the Presidio County property should have been appraised; however, the record contains an appraisal of the property conducted by Bette Lu Rogers, a state licensed real estate appraiser.

for Final Settlement" specifically states that the Cameron County court took judicial notice of Jarvis's letter objecting to the valuation of the Tennessee property.

Nevertheless, the record does not contain any evidence conclusively demonstrating that the market value of the Tennessee property is more than $108,500. On appeal, Jarvis includes a May 30, 2010 listing from LoopNet.com, a website apparently specializing in valuing real property, demonstrating that the Tennessee property should be valued at $0 to $100,000 per acre. Using the larger number, Jarvis argues on appeal that the Tennessee property is valued at $9.7 million (97 acres multiplied by $100,000). This LoopNet.com listing, however, is not included in the record and cannot be used to contradict the appraisal obtained from the Knox County appraisal district. *See Gonzalez*, 251 S.W.3d at 777 n.17; *Nguyen*, 93 S.W.3d at 293; *Till*, 10 S.W.3d at 733-34. Furthermore, even if we were to consider the LoopNet.com listing as formally included in the appellate record, this listing is not specific enough to indicate the precise value of the property. It states that the market value of agricultural property in the relevant part of Tennessee ranges from $0 to $100,000 per acre between the years 2005 and 2009, meaning that the property at various points in time could have been worth between $0 and $9.7 million. Based on the record before us, we cannot say that the trial court erred in approving the valuation for the Tennessee property to be $108,500.

Because the record contains uncontradicted evidence that the market value of the Tennessee property is $108,500 and that Jarvis received unencumbered real property valued at $89,175, we cannot say that Jarvis has met her burden to demonstrate that the Cameron County court erred in approving the distribution of

Caroline's estate.  *See Marlin v. Kelly*, 678 S.W.2d 582, 586 (Tex. App.–Houston [14th Dist.] 1984), *aff'd*, 714 S.W.2d 303 (Tex. 1986); *see also In re Estate of Cook*, Nos. 2-08-003-CV, 2-08-004-CV, 2009 Tex. App. LEXIS 9094, at *6 (Tex. App.–Fort Worth Nov. 25, 2009, no pet.) (mem. op.) ("When . . . a will is plain in its terms and unambiguous in its meaning as to the lawful intentions of the testator, it is a legal question for the court to interpret the will and carry out the testator's wishes.").  Based on our review of the record, it appears that each of the children received an equal $89,175 share of the estate and that such a distribution coincides with Caroline's intent, as expressed in her "Last Will and Testament."  As a result, we overrule Jarvis's fourth issue.

## V. CONCLUSION

We affirm the judgment of the trial court.

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
21st day of December, 2010.