

# NUMBER 13-17-00032-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**RACHAEL SARAH RUIZ,**                                        **Appellant,**

**v.**

**LARRY DELL NORRIS,**                                         **Appellee.**

---

## On appeal from the 261st District Court
## of Travis County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Rodriguez, Contreras, and Benavides
### Memorandum Opinion by Justice Contreras

Appellant Rachael Sarah Ruiz, pro se, appeals the trial court's final decree of

divorce by seven issues. We affirm.[1]

---

[1] This appeal was transferred to this Court from the Third Court of Appeals in Austin pursuant to a docket equalization order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2017 1st C.S.).

## I. BACKGROUND

The following background information is taken from the pleadings, the divorce decree, and a statement of facts attached to Ruiz's pro se brief. Ruiz was married to Kevin Hunter in 2007, and a divorce was granted in 2011 "pending property and final decree." In 2013, Ruiz gave birth to a daughter, A.V.R. She and A.V.R.'s father, appellee Larry Dell Norris, were married in August of 2015, and Norris filed for divorce in the 261st District Court of Travis County four months later. Ruiz, who was represented by counsel at the time, filed an answer generally denying the allegations in the divorce petition.

According to Ruiz, she and Norris entered into an agreement in 2014 under which she would be sole managing conservator of A.V.R. and Norris would have visitation rights. She asserts that the Office of the Attorney General "began enforcement proceedings" in Williamson County, which she claims became the court of continuing jurisdiction under the family code. She acknowledges that, after the divorce petition was filed, allegations of her "being mentally ill, suicidal and unstable began to surface." However, she claims that these allegations "originally stem from [Norris] being cruel, deceitful and malicious" toward her. She asserts that "[a]ll allegations in the pleadings were baseless [and] without any supporting facts or outright fabrications" as part of a "systematic scheme" by Norris, his counsel, "and currently unknown co-conspirators and agencies."

Ruiz alleges in her brief that an associate judge appointed a guardian ad litem to determine "if any of [Norris]'s accusations were substantiated"; that she petitioned for a de novo appeal to the district court; and that, during a hearing in the district court on March 23, 2016, Norris "was unable to validate any of [his] claims" and "all other accusations were disproved." Nevertheless, the trial court ordered psychological testing, which Ruiz claims "confirmed [she] had zero mental health issues."

2

A final decree of divorce was rendered on December 13, 2016 stating that, though Ruiz was duly notified of trial, she failed to appear and defaulted. The decree provided, among other things, that Norris shall be the child's sole managing conservator with the exclusive right to designate her primary residence without geographical restriction. The decree designated Ruiz as possessory conservator, but stated that there was credible evidence that the limitation of Ruiz's rights and duties as a parent would be in A.V.R.'s best interest. Therefore, the decree provided that Ruiz's access to or possession of the child "is not appropriate or in the best interest of the child . . . at this time." The decree also ordered Ruiz to pay to Norris $212.22 per month in child support, $60 per month for the child's health insurance, and $13,000 for Norris's attorney's fees. This appeal followed.[2]

## II. DISCUSSION

At the outset, we note that the Texas Rules of Appellate Procedure require an appellant's brief to contain "a succinct, clear, and accurate statement of the arguments made in the body of the brief" as well as "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(h), (i). Ruiz's status as a pro se appellant does not relieve her from these requirements. *See Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005) (providing that pro se litigants are held to the same standards as attorneys and must comply with the Texas Rules of Appellate Procedure); *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978); *Jarvis v. Feild*, 327 S.W.3d 918, 925 (Tex. App.—Corpus Christi 2010, no pet.). We will construe her brief liberally, *see* TEX. R. APP. P. 38.9, but we cannot make Ruiz's

---

[2] Norris has not filed a brief to assist us in the resolution of this appeal.

arguments for her, and we will not perform an independent review of the record and applicable law to determine whether there was error. *See Castro v. Ayala*, 511 S.W.3d 42, 48 (Tex. App.—El Paso 2014, no pet.); *Robertson v. Sw. Bell Yellow Pages, Inc.*, 190 S.W.3d 899, 903 (Tex. App.—Dallas 2006, no pet.); *Plummer v. Reeves*, 93 S.W.3d 930, 931 (Tex. App.—Amarillo 2003, pet. denied) ("[A]s judges, we are to be neutral and unbiased adjudicators of the dispute before us. Our being placed in the position of conducting research to find authority supporting legal propositions uttered by a litigant when the litigant has opted not to search for same runs afoul of that ideal, however. Under that circumstance, we are no longer unbiased, but rather become an advocate for the party.").

## A.  Prior Marriage

By her first issue, Ruiz contends that the divorce is "null and void" because her earlier marriage was never legally dissolved. The issue is not supported by any coherent argument, nor does it contain any references to authority or to the record. The issue is therefore overruled as inadequately briefed. *See* Tex. R. App. P. 38.1(i).

## B.  Spelling of Name

By her second issue, Ruiz appears to argue that the "interchangeable" spelling of her given name, which appears variously as "Rachael" and "Rachel" throughout the record, indicates that that she was not properly served with notice, resulting in a "simulation of service/justice." Ruiz appears to suggest that the trial court rendered an order nunc pro tunc changing the spelling of her given name. The issue contains no reference to authority or to the record, although there is a reference to a "Social Security Number Verification" form which was attached as exhibit to the brief. We conclude that the issue has been inadequately briefed, and we therefore overrule it. *See id.*

4

**C.      Paternity**

By her third issue, Ruiz argues that A.V.R. "was not a child born of the marriage yet the trial court failed to order DNA testing as required by law."  She notes:  "In May of 2014, [Ruiz] was the Sole-Managing Conservator and only caretaker of the minor, AVR pursuant to an agreed SAPCR Attorney General Custody and Support order signed on May 30th 2014."  There is no reference to the record or to any authority.  The issue is overruled as inadequately briefed.  *See id.*

**D.      Continuing Exclusive Jurisdiction**

Ruiz contends by her fourth issue that the trial court "had a duty to enter no further orders, except an order of dismissal until the bureau of vital statistics (BVS) was filed with the court [sic]" pursuant to Texas Family Code chapter 155.  Under that chapter, a court acquires "continuing, exclusive jurisdiction" over certain matters in connection with a child "on the rendition of a final order."  TEX. FAM. CODE ANN. § 155.001(a) (West, Westlaw through 2017 1st C.S.).  In general, if a Texas court has acquired continuing, exclusive jurisdiction with regard to a child, no other Texas court has jurisdiction over a suit with regard to that child.  *Id.* § 155.001(c).

The vital statistics unit of the Texas Department of State Health Services must, upon the written request of the court or a party, identify the court that last had continuing, exclusive jurisdiction over a child or state that the child has not been the subject of a suit.  *Id.* § 155.101(b) (West, Westlaw through 2017 1st C.S.).  "If a court in which a suit is filed determines that another court has continuing, exclusive jurisdiction of the child, the court in which the suit is filed shall dismiss the suit without prejudice."  *Id.* § 155.102 (West, Westlaw through 2017 1st C.S.).  But, on the filing of a motion showing that a divorce petition been filed in another court and requesting a transfer to that court, the court having

5

continuing, exclusive jurisdiction over a child of the marriage must transfer the proceedings to the court in which the divorce is pending. *Id.* § 155.201(a) (West, Westlaw through 2017 1st C.S.).

Ruiz appears to assert that the 395th District Court in Williamson County had continuing, exclusive jurisdiction over A.V.R. due to a prior child support enforcement proceeding brought in that court. However, Norris's divorce petition specifically alleged that no other court had continuing jurisdiction over A.V.R., and Ruiz's answer did not specifically refute that allegation. *See id.* § 155.101(a) (providing that the petitioner or the court "shall request" from the vital statistics unit identification of the court that last had continuing, exclusive jurisdiction of the child in a suit "unless . . . the petition alleges that no court has continuing, exclusive jurisdiction of the child and the issue is not disputed by the pleadings"). In any event, the trial court stated at the divorce trial that the child support enforcement proceedings had been transferred to the 261st District Court pursuant to the family code. *See id.* § 155.201(a). For the foregoing reasons, we overrule Ruiz's fourth issue.

## E.    De Novo Hearing

Ruiz's fifth issue concerns a de novo hearing that was held before the district judge on March 22, 2016, following the rendition of temporary orders by an associate judge on February 22, 2016. *See id.* § 201.001–.320 (West, Westlaw through 2017 1st C.S.) (authorizing the appointment of an associate judge in suits affecting the parent-child relationship). Ruiz appears to contend that she was "deprived . . . of her right to an attorney" at the hearing and that the referring court "heard an appeal" rather than a "de novo hearing" as provided by law. She contends that her retained counsel did not appear at the hearing because counsel had to attend a trial in another county. The only

6

references to authority made in Ruiz's argument are to family code section 201.105, which allows for a de novo hearing before a referring court after an associate judge issues a report, and Texas Rules of Appellate Procedure 26 and 27, regarding the time for perfecting an appeal to a court of appeals. *See id.* § 201.015; *see also* TEX. R. APP. P. 26, 27. No references to the record are made. Without more, we cannot conclude that the issue has merit. Therefore, it is overruled.

## F.    Conservatorship

By her sixth issue, Ruiz argues that the trial court erred in naming Norris as A.V.R.'s sole managing conservator. She contends without reference to the record that "it is constitutionally invalid for [Norris] to be sole managing conservator with a conviction of domestic violence" and there was "no evidence of specific acts or omissions from which the court could have logically inferred that [Ruiz] is presently unfit to be a managing conservator." She cites family code section 153.131, which provides that "[i]t is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child." TEX. FAM. CODE ANN. § 153.131(b) (West, Westlaw through 2017 1st C.S.). Ruiz does not reference the record or cite authority establishing the appropriate standard of review.[3] Nevertheless, in our sole discretion and out of an abundance of caution, we will address her sixth issue.

The primary consideration in determining issues of conservatorship and possession of and access to a child is always the child's best interest. *Id.* § 153.002

---

[3] As part of her sixth issue, Ruiz cites authority showing that there is a "strong presumption that the best interest of the child is served if a natural parent is awarded custody," *In re R.D.Y.*, 51 S.W.3d 314, 320 (Tex. App.—Houston [1st Dist.] 2001, pet. denied), and that to obtain custody, a non-parent "must affirmatively prove by a preponderance of the evidence that appointment of the parent as managing conservator would significantly impair the child, either physically or emotionally." *Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990). But Ruiz directs us to nothing in the record indicating that Norris is a non-parent.

(West, Westlaw through 2017 1st C.S.); *In re J.A.J.*, 243 S.W.3d 611, 614 (Tex. 2008). Generally, the trial court has wide latitude in determining the best interest of a minor child, and its judgment will not be disturbed on appeal unless the record as a whole shows that the trial court abused its discretion. *In re J.E.P.*, 49 S.W.3d 380, 386 (Tex. App.—Fort Worth 2000, no pet.). To determine whether a trial court abused its discretion, we must decide whether the trial court was arbitrary or unreasonable, or made without reference to guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id.* An abuse of discretion will not be found if some evidence of substantive and probative character exists to support the ruling. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).

The divorce decree stated that there was "credible evidence" that the "limitation" of Ruiz's parental rights and duties is in A.V.R.'s best interest, and that a standard possession order "is not appropriate . . . at this time." The decree specifically referenced the recommendation of the guardian ad litem and Norris's testimony. The guardian ad litem, Leslie Massad, stated at a hearing on October 20, 2016 that Ruiz had made accusations of sexual abuse against Norris that were deemed to be unfounded, and Ruiz had kept the child beyond the visitation times prescribed by the court. Norris testified that Ruiz kept the child for a period beginning on October 3, 2016, in violation of the court's order. He conceded that he also once kept A.V.R. beyond the period prescribed by court order "because I had just got her back from a two and a half week period where [Ruiz] kept her." Norris stated that Ruiz has sent him emails discussing suicide and that he is "very much" concerned about Ruiz's mental health. He asked the court to order "strict"

8

supervised visitation for Ruiz. Following the hearing, the trial court denied the request for supervised visitation and instead ordered unsupervised visitation to continue as previously ordered.

One week later, on October 27, 2016, another hearing was held at which Norris's counsel represented that Ruiz "immediately violated" the visitation order and "has retained possession of the child in violation of that order ever since." Massad testified that she is concerned about Ruiz's mental state and does not believe Ruiz is "thinking clearly." Massad stated she continues to recommend supervised visitation because "[i]t seems that every time [Ruiz] gets the child she doesn't return the child." At the conclusion of this hearing, the trial court ordered that Ruiz is prohibited from possessing the child "unless supervised." At that point, Ruiz stated that she would voluntarily relinquish her parental rights and that she would not pick up the child according to the new visitation order.[4]

On December 12, 2016, the court called the case for trial and noted that Ruiz failed to appear. Massad testified that Ruiz previously indicated an intent not to appear at trial, but that she recently received a call from Ruiz asking if she could appear at the trial by phone. The court noted that Ruiz advised the court's staff that she was not going to appear at the trial. The court further noted that Ruiz had filed a motion to continue on December 7, 2016 based on a medical emergency, but the motion was denied because Ruiz had not provided supporting documentation.

In his trial testimony, Norris agreed with his counsel that Ruiz "lacks the ability to make appropriate decisions" regarding parental rights and duties. He stated Ruiz has

---

[4] No affidavit of relinquishment of parental rights appears in the record. *See* TEX. FAM. CODE ANN. § 161.103 (West, Westlaw through 2017 1st C.S.).

9

emailed, texted, and called him "many times" in violation of the court's orders; that she has threatened him; and that she owes him $3,500 in previously-ordered child support. Norris stated he believes it is in A.V.R.'s best interest for him to be her sole managing conservator and for Ruiz to be granted no visitation, noting that he is concerned about Ruiz's mental stability and about A.V.R.'s safety in Ruiz's presence. Norris stated that Ruiz has threatened to kill or hurt herself on multiple past occasions, and that her "mental status" has worsened over the course of the case. He stated he wants to continue A.V.R.'s relationship with her maternal grandparents.

Massad also testified she has concerns about Ruiz's mental health and her ability to make appropriate decisions regarding the child. Massad stated she does not believe, based on Ruiz's prior behavior, that Ruiz had the ability to comply with court orders. Massad agreed that, in the past, Ruiz had removed the child from daycare and not returned the child to Norris or the daycare; that she "refuses" to follow court orders; and that she has "has moved around" but at times has refused to inform the court about her whereabouts. Like Norris, Massad testified that Ruiz's mental health declined significantly in the month prior to trial. Massad stated that Ruiz "has been given every opportunity to see her child and have reasonable visitation, and she has squandered every opportunity." She recommended that Ruiz have no visitation with the child until further order of the court.

Considering all of the above-referenced testimony and evidence, we conclude that the trial court did not abuse its discretion by designating Norris as A.V.R.'s sole managing conservator and by ordering no visitation for Ruiz. In particular, the substantive and probative evidence supported the trial court's implicit finding that the presumption under family code section 153.131(b) had been effectively rebutted and that the specified

10

arrangements were in the A.V.R.'s best interest.  *See* TEX. FAM. CODE ANN. § 153.131(b).
We overrule Ruiz's sixth issue.

## G.    Temporary Order

Finally, Ruiz contends by a multifarious final issue that a temporary injunction order was void because it did not set a bond.  She cites case law stating that temporary orders filed without a bond are void and that reviewing courts should set void judgments aside. *See LaGoye v. Victoria Wood Condo. Ass'n*, 112 S.W.3d 777, 785 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *Chambers v. Rosenberg*, 916 S.W.2d 633, 635 (Tex. App.— Austin 1996, writ denied).   Ruiz does not provide an accurate record citation to any injunction order which she claims is void.  In any event, the family code provides that a temporary order in a suit affecting the parent-child relationship need not set a bond.  TEX. FAM. CODE ANN. § 105.001(d) (West, Westlaw through 2017 1st C.S. ("In a suit, the court may dispense with the necessity of a bond in connection with temporary orders on behalf of the child.").  We overrule Ruiz's final issue.

## III. CONCLUSION

Having overruled Ruiz's issues, we affirm the judgment of the trial court.  All pending motions are denied as moot.

DORI CONTRERAS
Justice

Delivered and filed the 15th
day of November, 2018.

11